2007-NMCA-155

173 P.3d 26

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Rudy MAESTAS, Defendant–Appellant.**

**No.  26,206.**

Court of Appeals of New Mexico.

Oct. 10, 2007.

for exercising his right to a jury trial. We hold that the metropolitan court did not commit reversible error with respect to the 182–day rule. However, we agree that the metropolitan court improperly exercised a blanket policy of immediately remanding to custody those defendants who chose to go to trial and were convicted while allowing those defendants who chose to plead guilty to remain out of custody pending sentencing. Because the metropolitan court's actions can be construed as impermissibly punishing Defendant for exercising his constitutional rights to plead not guilty, to a jury trial, and to appeal, we vacate Defendant's sentence and remand for re-sentencing before another judge.

**BACKGROUND**

{2} Defendant was arrested and charged with aggravated DWI and speeding on March 12, 2004. After a number of continuances, the matter came up for trial on December 8, 2004, before the Bernalillo County Metropolitan Court. Before trial, defense counsel moved to dismiss based on a violation of the 182–day rule. *See* Rule 7–506 NMRA 2004 (amended 2007) (providing that a trial in metropolitan court must commence within 182 days of an arrest or the filing of a complaint). The metropolitan court denied the motion.

{3} The jury found Defendant guilty of aggravated DWI (second offense) and speeding. Upon Defendant's conviction but before sentencing, the judge immediately revoked Defendant's conditions of release, remanded him to custody to begin serving his mandatory time, and ordered a speedy pre-sentence report (PSR). Although the metropolitan court judge set an appeal bond of $50,000, she initially refused to allow Defendant to obtain a bond so that he could be released pending sentencing. After lengthy argument from the parties, the judge finally agreed to allow a $50,000 cash bond.

{4} The district court reviewed Defendant's conditions of release pending sentencing and lowered the bond to a $5000 cash or surety bond. Defendant served eight days before he was released, which included all of his mandatory time. *See* NMSA 1978, § 66–8–102(F)(1) (2005) (providing that a defen-

Gary K. King, Attorney General, Santa Fe, NM, M. Anne Kelly, Assistant Attorney General, Albuquerque, NM, for Appellee.

D. Eric Hannum, Albuquerque, NM, for Appellant.

**OPINION**

BUSTAMANTE, Judge.

{1} Defendant appeals his convictions for aggravated driving while under the influence (DWI) and speeding. Defendant was convicted after a jury trial in metropolitan court. His convictions were affirmed in an on-record appeal in district court. On appeal to this Court, Defendant argues that the metropolitan court (1) abused its discretion in determining that the 182–day rule was not violated, and (2) impermissibly penalized him

dant convicted of a DWI second offense shall be punished by imprisonment for not more than 364 days, including a mandatory ninety-six consecutive hours and an additional ninety-six consecutive hours if that conviction for aggravated DWI).

{5} At the sentencing hearing on January 6, 2005, the judge stated that she was sentencing Defendant to "300 days plus" of jail time with credit for time served followed by participation in the alcohol treatment program. She set an appeal bond at $5000. Despite her statements at the hearing, the metropolitan court's judgment indicates that the judge sentenced Defendant to 364 days, the maximum sentence for aggravated DWI second offense.

{6} Defendant appealed to the district court, which affirmed. Further facts relevant to each issue will be presented below.

**DISCUSSION**

{7} We first discuss Defendant's claim that the 182–day rule was violated. We then turn to his claim that the metropolitan court impermissibly punished him for exercising his right to trial.

## I. THE METROPOLITAN COURT PROPERLY DETERMINED THAT THE 182–DAY RULE WAS NOT VIOLATED

■ {8} Defendant argues that the metropolitan court erred in denying his motion to dismiss under the 182–day rule. See Rule 7–506(E) NMRA 2004. Specifically, Defendant claims that the court erred by charging the continuance of a trial setting on August 3, 2004, against him.

■ The 182–day rule in effect when Defendant was arrested provided:

Any criminal citation or complaint within metropolitan court trial jurisdiction which is pending for more than one hundred eighty-two (182) days from the date of the arrest of the defendant or the filing of a complaint or citation against the defendant, whichever occurs later, without commencement of a trial by the metropolitan court shall be dismissed with prejudice unless, after a hearing, the judge finds that the defendant was responsible for the fail-

ure of the court to commence trial. After a complaint is dismissed pursuant to this paragraph, a criminal charge for the same offense shall not be filed in any court. *Id.* The purpose of the 182–day rule in metropolitan court "is to encourage the prompt and orderly disposition of criminal cases, not to effectuate dismissals." *State v. Hoffman*, 114 N.M. 445, 446, 839 P.2d 1333, 1334 (Ct. App.1992). The rules of metropolitan court are to be "liberally construed to secure the just, speedy and inexpensive determination of every metropolitan court action" and not to "be construed to extend or limit the jurisdiction of any court, or to abridge, enlarge or modify the substantive rights of any litigant." Rule 7–101(B) NMRA; *see also Walker v. Walton*, 2003–NMSC–014, ¶ 11, 133 N.M. 766, 70 P.3d 756.

■ {9} It is for the metropolitan court to decide in the first instance whom to hold responsible for the failure to timely commence a trial under Rule 7–506(E) NMRA 2004. *See State v. Lucero*, 114 N.M. 460, 462–63, 840 P.2d 607, 609–10 (Ct.App.1992). The question of whether the metropolitan court properly applied the provisions of Rule 7–506 NMRA 2004 is a question of law that we review de novo. *See State v. Wilson*, 1998–NMCA–084, ¶ 8, 125 N.M. 390, 962 P.2d 636 (applying de novo review to the district court's application of the six-month rule).

{10} At trial, defense counsel acknowledged that his only objection on the 182–day rule was the metropolitan court's decision to charge the continuance of the August 3, 2004 trial setting against Defendant. Thus, the only issue on appeal regarding the metropolitan court's application of Rule 7–506 is the decision to charge the August 3, 2004, continuance against Defendant rather than the State.

{11} This matter was originally set for bench trial on June 15, 2004. On June 7, 2004, the State filed a motion to amend the complaint from aggravated DWI first offense to aggravated DWI second offense based on proof of a prior DWI conviction. The motion was set to be heard at the next setting; however, the June 15 trial setting was continued and charged against Defendant due to a

scheduling conflict of defense counsel. The next trial setting, on July 14, 2004, was continued against the State due to the absence of one of the arresting officers. The State's motion to amend was not addressed. On July 15, 2004, the State filed a second motion to amend, which the judge noted was to be heard at the next setting.

{12} When Defendant's case came up for trial again on August 3, 2004, both parties stated that they were ready to proceed. In a preliminary motion, the prosecutor asked the court to rule on the State's motion to amend the aggravated DWI charge in the complaint from a first offense to a second offense. After determining that defense counsel received notice of the State's intention to amend the complaint as early as June 7, and that proof of the prior DWI conviction was available to defense counsel as of July 15, the metropolitan court granted the State's motion to amend.

▋ {13} We find no abuse of discretion in the metropolitan court's decision to allow the motion to amend. *See State v. Hodnett*, 79 N.M. 761, 762, 449 P.2d 669, 670 (Ct.App. 1968) (stating that a trial court's decision to allow an amendment to a complaint is reviewed for an abuse of discretion). Amendments to complaints should be liberally allowed. *Id.; see also* Rule 7–303(A) NMRA (providing that the metropolitan court may allow an amendment at any time). Here, both motions provided notice to Defendant that the State had proof that Defendant had a prior DWI. Defendant did not challenge the State's proof or otherwise contest the appropriateness of the amendment. A court does not abuse its discretion by allowing an amendment that includes facts subsequently discovered and timely communicated when there is no change to the elements of the offense charged. *See State v. Begay*, 2001–NMSC–002, ¶ 5, 130 N.M. 61, 17 P.3d 434 (stating that proof of a prior DWI is not an element of felony DWI). Thus, the metropolitan court properly granted the State's motion to amend.

{14} Because the amended DWI complaint increased the maximum jail time faced by Defendant to more than six months, the metropolitan court noted that Defendant was entitled to a jury trial. *See* § 66–8–102(F) (providing that the potential penalty for a second aggravated DWI is imprisonment for not more than 364 days); *see also State v. Grace*, 1999–NMCA–148, ¶¶ 5, 10, 128 N.M. 379, 993 P.2d 93 (holding that a defendant charged with DWI second offense has a constitutional right to a jury trial because he faces a potential loss of liberty exceeding six months). When the metropolitan court told Defendant that a jury was available, defense counsel objected to proceeding to trial at the August 3 setting. Defense counsel stated that if the case was tried before a jury he would need to obtain the tape recording of Defendant's license revocation hearing before the Motor Vehicle Division (MVD) in order to impeach the State's witnesses. The prosecutor stated that she was ready to try the case.

{15} The metropolitan court noted, and defense counsel agreed, that the tape recording of the MVD hearing was not a discovery issue for the State because the State did not have access to the tapes. The court ruled that defense counsel had received sufficient notice of the prosecutor's motion to amend in order to be prepared for a jury trial at the August 3 setting. The metropolitan court agreed to continue the August 3 setting to give defense counsel extra time to obtain the tapes, but stated it would charge the continuance against Defendant. Defense counsel objected that the continuance should be charged against the State.

▋ {16} The grant or denial of a continuance is within the sound discretion of the district court. *See State v. Stefani*, 2006–NMCA–073, ¶ 9, 139 N.M. 719, 137 P.3d 659. Here, the State was ready to go to trial and a jury panel was available. Defendant claimed that he needed further information in the form of the MVD transcripts in order to proceed. Thus, the metropolitan court acted within its discretion by granting Defendant a continuance to prepare for a jury trial instead of a bench trial.

{17} Turning to the decision to charge the continuance to Defendant, it is the metropolitan court's responsibility to determine which times are chargeable to the defendant if the

defendant's actions resulted in the failure to commence trial. *See Lucero,* 114 N.M. at 462–63, 840 P.2d at 609–10. The 182–day rule in effect at the time provided that charges shall be dismissed if trial is not commenced within 182 days unless, after a hearing, the court finds that the defendant was responsible for the failure of the court to commence trial. Rule 7–506(E) NMRA 2004. Given that Defendant had sufficient notice of the amendment, we cannot say that the district court erred in finding that it was Defendant's inability to proceed with a trial by jury that caused the delay. Thus, we reject Defendant's contention that the metropolitan court abused its discretion in determining that the delay should be charged to Defendant.

{18} As Defendant concedes, his claim on appeal that the 182–day rule was violated depends on finding that the metropolitan court erred in charging the August 3 continuance to him. Because we conclude that the metropolitan court properly exercised its discretion in charging the August 3 continuance against Defendant, we find no merit in Defendant's argument that the metropolitan court erred in not dismissing this case for violation of the 182–day rule.

## II. THE METROPOLITAN COURT IMPERMISSIBLY INFRINGED ON DEFENDANT'S CONSTITUTIONAL RIGHTS

### A. Standard of Review

■ {19} Defendant contends that the metropolitan court impermissibly penalized him for exercising his right to a trial. For this contention, Defendant relies on *State v. Bonilla,* 2000–NMSC–037, 130 N.M. 1, 15 P.3d 491. In *Bonilla,* our Supreme Court vacated a defendant's sentence after concluding that the district court made remarks prior to sentencing the defendant that indicated the court may have improperly considered the defendant's exercise of his constitutional right to a jury trial. *Id.* ¶ 15. In *Bonilla,* the Court reviewed the district court's remarks and sentencing for abuse of discretion. *Id.* ¶¶ 6, 15.

### B. Facts Relevant to the Revocation of the Conditions of Release and Remand

{20} Defendant argues that the judge made several remarks upon Defendant's conviction and prior to sentencing that can be construed as penalizing Defendant for exercising his right to a trial. Those remarks include the following.

{21} After the jury found Defendant guilty of aggravated DWI (second offense) and speeding, the metropolitan court judge noted that Defendant had not done any jail time. She stated that she was inclined to ask for a speedy pre-sentence report (PSR) and to remand Defendant into custody to serve his mandatory time on the aggravated DWI. The judge explained that she had different policies with regard to persons who elect to have trials versus those who plead guilty.

> Understand with individuals that are before me on taking pleas, I leave people out of custody to get PSRs done. And that's part and parcel because there's an admission made. You haven't done anything with regard to the mandatory consecutive time of an aggravation. I'm gonna go ahead and remand you into custody at this point and time, and order a speedy PSR to be prepared in this case.

The judge announced that she was revoking Defendant's conditions of release, remanding him to custody, and ordering a speedy PSR. She stated that she would allow a $5000 cash or surety appeal bond.

{22} Defense counsel objected to the immediate remand, arguing that Defendant was a single parent and needed to make arrangements for his daughter. Defendant told the court he had made every court appearance and would come to sentencing. Defense counsel argued that Defendant was not a flight risk. Defense counsel explained that he would ask for an appeal bond at sentencing but could not yet appeal because the court had not actually sentenced Defendant.

{23} The judge responded:

> The fact of the matter is . . . it's different now. Now you've been found guilty. And the policy that I have very firmly with regard to pleas on individuals that take a

plea in these cases is I let them go until the time of their sentencing. With regard to your situation, you've taken the time to have this trial. You've taken all this time to know that there's the possibility you're gonna be found guilty and there's mandatory time. You've been out of custody for months and months and months. That issue has been hanging over your head all this time. It's not realistic to think this could happen today, I really don't believe. So, with regard to this, you have to start your mandatory time.

Defendant asked whether he would be able to remain out of custody on bond pending custody. "No," the judge answered, "because you have mandatory time whether you appeal this case or not. I'm gonna have you do the mandatory time." Defense counsel objected. "You're sentencing him right now without a sentence, which means I cannot appeal. You're going to put him in jail on the mandatory time." The judge responded that she was not sentencing Defendant but revoking the conditions of release based on a guilty adjudication. Defense counsel argued that Rule 7–402 NMRA contemplated that the same conditions of release would remain in place pending sentencing unless the court found that Defendant was a flight risk or a problem to the orderly administration of justice. He asserted that the court could not begin a sentence before a sentencing hearing.

{24} The judge responded that her policy was very clear.

There's a very bright line with regard to this. If you make a plea in a case, if you give me an admission of guilt, I don't put people in custody on aggravated time. I let them go and do a PSR. If you've been found guilty at trial there is notice that if you have an aggravated charge I'm gonna remand you if you are found guilty on that and I have done that and I have been consistent in that and my decision to do that is based upon people not showing up even though they've shown up many, many times before and prior. I don't have people showing up and I have bench warrants on people that are exactly in [Defendant's] case. I don't know anything about you and I would think that you would want a

sentence that would be put in place after I learned something about you, after there's a PSR.

After further argument, the judge finally agreed to set a $50,000 cash bond pending final sentencing.

## C. The Metropolitan Court's Policy Constitutes an Abuse of Discretion

{25} In reviewing the judge's remarks upon conviction, we appreciate that they can be construed in more than one way. However, we agree with Defendant that the remarks evidence an abuse of discretion for two different reasons. At best, the remarks indicate that the judge improperly exercised a blanket policy that automatically went into effect upon conviction without giving due consideration to a particular defendant's circumstances. *See Simpson v. Campbell*, 791 So.2d 496, 497 (Fla.Dist.Ct.App.2001) (addressing a Florida trial judge's "standard policy" of automatically remanding criminal defendants directly into custody upon jury conviction). At worst, the remarks indicate that the judge improperly considered Defendant's exercise of his constitutional rights to plead not guilty, to go to trial, and to appeal. *See* U.S. Const. amends. V–VI; N.M. Const. art. II, § 12, 14; *id.* art. VI, § 2; *see also Simpson*, 791 So.2d at 497 (classifying a Florida trial judge's "standard policy" of automatically remanding criminal defendants upon jury conviction as "an indefensible sanction for asserting the right to a jury trial"). We will address each point in turn.

### 1. The Metropolitan Court's Policy Did Not Allow for Any Discretion Under Rule 7–402

{26} Upon Defendant's conviction, without hearing any argument, the judge immediately announced that she was revoking the conditions of release and remanding Defendant to custody. The judge stated that she had a very firm policy of allowing those who plead guilty to remain free pending sentencing and requiring those who were found guilty after electing to go to trial to begin serving their mandatory time.

{27} We acknowledge that a defendant who has been adjudicated guilty but not yet

sentenced is not automatically entitled to release under the same terms and conditions that were previously imposed pending or during trial. *State v. Valles,* 2004–NMCA–118, ¶ 13, 140 N.M. 458, 143 P.3d 496 (noting in construing the district court rule on conditions of release pending sentencing that the risk that a defendant will not appear materially increases upon a determination of guilt). However, while a trial court may consider a guilty adjudication as a factor increasing a defendant's flight risk, we do not construe Rule 7–402(B) as allowing a trial court to exercise an automatic policy of immediately revoking the conditions of release of all defendants who are found guilty after a trial.

■ {28} The interpretation and application of court rules are questions of law that we review de novo. *Valles,* 2004–NMCA–118, ¶ 8. The metropolitan court rule on conditions of release, Rule 7–402(B) NMRA, provides:

> B. **Release pending sentence or new trial.** A defendant released pending or during trial shall continue on release pending the imposition of sentence or pending final disposition of any new trial under the same terms and conditions as previously imposed, unless the surety has been released or the court has determined that other terms and conditions or termination of release are necessary to assure:
>
> (1) that the defendant will not flee the jurisdiction of the court; or
>
> (2) that the defendant's conduct will not obstruct the orderly administration of justice.

In our view, the rule requires the metropolitan court to make a determination that termination of release is necessary before revoking the conditions of release.

{29} In reaching this conclusion, we note that our rule is different than the federal rule, which establishes a presumption that a convicted defendant be remanded to custody and places the burden on the defendant to convince the court to grant conditions of release. *See* 18 U.S.C. § 3143 (2000) (providing that a person found guilty of an offense be detained awaiting sentencing unless the person can prove by clear and convincing evidence that the person is not likely to flee

or pose a danger to anyone if released). In contrast, our rule contemplates that the metropolitan court should not automatically revoke the conditions of release upon a guilty adjudication without giving due consideration to the circumstances of the particular defendant. *See* Rule 7–402(B) (stating that "[a] defendant released pending or during trial *shall* continue on release pending the imposition of sentence ... under the same terms and conditions as previously imposed, *unless* ... the court has determined that other terms and conditions or termination of release are necessary to assure" that the defendant will not flee or obstruct the orderly administration of justice (emphasis added)).

{30} A fair reading of Rule 7–402(B) suggests that the metropolitan court should exercise its discretion to determine whether to continue a pre-trial bond in force pending sentencing. Here, the judge automatically revoked the conditions of Defendant's release upon a guilty adjudication, stating that she did so with all defendants who elected to go to trial and were convicted. Later, the judge explained that her policy was based on the defendants' change in status upon a guilty adjudication and on her experience with defendants failing to appear for sentencing.

{31} To be sure, issues of pre-trial and post-trial release differ primarily due to concerns such as increased flight risk that flow from the conviction itself. *Valles,* 2004–NMCA–118, ¶ 13. But even this difference does not invest a judge with unfettered power to deny post-trial release. We interpret Rule 7–402 to give the court an affirmative duty to undertake a case-by-case, defendant-by-defendant evaluation and to fashion an appropriate disposition regarding conditions of release pending sentencing. While the decision to revoke the conditions of release is within the sound discretion of the trial court, it is axiomatic that the exercise of judicial discretion should never be arbitrary, capricious, or unreasonable. When discretion is exercised in favor of denying a person a basic and fundamental right, the basis for doing so must be governed by reason and exercised in light of the facts and circumstances of each particular case.

{32} In this case, Defendant objected to the immediate remand by arguing that he had appeared before the court eight times prior to his conviction and that there was no reason to believe he would not appear for sentencing. The judge apparently gave no consideration to Defendant's circumstances, and in fact stated that she knew nothing about Defendant. The judge did not explicitly determine whether Defendant would pose a flight risk or obstruct the orderly administration of justice. Yet, any fear that Defendant would flee appears to be at odds with the fact that Defendant was permitted to remain free for nine months from his arrest to his trial on a $1,000 cash or surety bond without incident. As a result, we must question the metropolitan court's decisions first to deny release altogether and then to condition release on a high cash bond. Although Defendant may not have a constitutional right to a release bond pending sentencing, nothing in the record indicates that the metropolitan court made a reasoned determination that a $50,000 cash bond was necessary to assure Defendant's appearance.

{33} In light of the circumstances of this case, we are concerned that the judge's policy demonstrates an unvarying predetermination of issues which require the exercise of judicial discretion. By relying on her policy, the judge in effect exercised no discretion. Because the metropolitan court rule contemplates the exercise of sound judicial discretion, we conclude that the judge abused her discretion in changing the conditions of release and setting an unusually high release bond.

## 2. The Metropolitan Court's Remarks Can Be Construed as Punishing Defendants for Exercising Their Constitutional Rights

{34} The State contends that even if we conclude that the judge abused her discretion in revoking Defendant's conditions of release and raising Defendant's release bond pending sentencing, the issue was mooted by the district court's order reducing the bond. Because we are concerned that the judge's remarks, at worst, can be construed as punishing Defendant for exercising his constitutional rights, we disagree.

{35} Upon careful consideration of the metropolitan court's remarks, we agree with Defendant that *Bonilla* controls our disposition of this case. *Bonilla* expresses the following principle: "'A practice which discourages the Fifth Amendment right not to plead guilty, which deters the Sixth Amendment right to demand a jury trial and which chills the assertion of these constitutional rights by penalizing those who choose to exercise them is patently unconstitutional.'" 2000–NMSC–037, ¶7, 130 N.M. 1, 15 P.3d 491 (quoting *Thurston v. State*, 791 S.W.2d 893, 896 (Mo.Ct.App.1990)).

{36} In *Bonilla*, the Supreme Court reviewed remarks made by the trial judge before a defendant's sentencing hearing. *See* 2000–NMSC–037, ¶4, 130 N.M. 1, 15 P.3d 491. While sentencing another defendant, the judge stated it was his general policy that "if a person is found guilty of a crime in this court by a jury, that the statutory penalty be imposed." *Id.* (internal quotation marks omitted). Even though the trial judge did not make any questionable remarks during the defendant's sentencing that could be construed as punishing the defendant for electing to go to trial, and the defendant was given a sentence that fell within the statutory guidelines, *id.*, our Supreme Court vacated the sentence to correct even the appearance of impropriety. *Id.* ¶15.

{37} The analysis in *Bonilla* started with the question of whether the trial judge's comments "affirmatively established a policy that appears to penalize defendants for exercis[ing] their Sixth Amendment right to trial by jury." *Id.* ¶8. In light of *Bonilla*, we review the judge's comments to determine whether her policy of treating defendants who elect to have a trial differently from those who take a plea can be construed as impermissibly infringing upon Defendant's constitutional rights.

{38} The judge immediately announced upon Defendant's conviction that she was revoking the conditions of Defendant's release, remanding him to custody, and ordering a speedy PSR. In taking these actions, the judge stated that she had a different

policy with regard to persons who elect to have trials versus those who plead guilty. The judge stated that she allows defendants who take a plea to remain out of custody pending sentencing. For those who choose to go to trial, the judge stated she had a firm policy of remanding them to custody upon an adjudication of guilt. In explaining her policy, the judge remarked that Defendant had "taken the time to have this trial" and had "been out of custody for months and months and months." The judge emphasized that Defendant had mandatory time to serve and that she wanted him to start serving it whether he appealed his conviction or not.

{39} We conclude that the judge's remarks affirmatively established a policy that appears to penalize defendants for exercising their rights to plead not guilty and to demand a jury trial. *See* U.S. Const. amends. V–VI; N.M. Const. art. II, §§ 12, 14. The judge announced that she treated defendants who elected to go to trial differently from those who plead guilty. Thus, those who are found guilty after trial are required to begin serving their mandatory sentence immediately while those who plead guilty are allowed to remain free pending sentencing. While the State argues that the judge's policy did not operate to punish those who chose to go to trial, and related only to the timing of remand, we are not persuaded. A policy that appears to preclude release pending sentencing only for those defendants who refuse to plead guilty could impermissibly burden the exercise of constitutional rights.

{40} In demanding that Defendant serve mandatory time immediately, and setting a high bond, the judge's actions could also be seen as infringing on Defendant's right to appeal. *See* N.M. Const. art. VI, § 2. The judge initially stated that she would not allow Defendant to remain out of custody pending sentencing so that he could begin his mandatory sentence. She stated that she wanted Defendant to serve his mandatory time whether he appealed or not. Contrary to the State's assertion on appeal, the judge made no inquiry about the necessity for an increase in the amount of Defendant's bond in this case and no findings that this particular defendant was a flight risk or danger to the community. In the absence of circumstances that warrant revoking the conditions of release and setting a high cash bond, we think the metropolitan court's policy can be construed not only as penalizing defendants who elect to exercise their rights to trial but as interfering with their right to appeal. The impact of this policy is particularly troubling in the event a conviction is overturned. By being denied the opportunity to appeal, some defendants could serve time that they were not required to serve.

{41} In *Bonilla*, the Supreme Court was concerned that the trial court's comments could be construed as chilling a defendant's rights to plead not guilty and to elect to go to trial. 2000–NMSC–037, ¶ 13, 130 N.M. 1, 15 P.3d 491. We find the same concerns at play here. The metropolitan court's policy could serve as a chilling effect on defendants who not only want to exercise their right to plead not guilty and go to trial, but to appeal. In *Bonilla*, the remarks at issue were not made at the defendant's sentencing hearing. *Id.* ¶ 4. Nonetheless, the Supreme Court took the precautionary measure of vacating the sentence because the remarks indicated that the judge might have used improper considerations in sentencing the defendant. *Id.* ¶ 15. Similarly, based on the judge's comments upon Defendant's conviction, we cannot conclude that Defendant's maximum sentence of 364 days was free from improper consideration even though it fell within the statutory range. Because he went to trial, Defendant was required to begin serving his mandatory time immediately. Yet, if Defendant had not gone to trial and taken a plea, he would have remained out of jail until sentencing. Although the judge insisted she was not sentencing Defendant, in the absence of any indication that the judge was remanding Defendant to custody because she determined he was a flight risk or a danger to the community, the judge's statements affirmatively established a policy that appears to penalize defendants for exercising their rights to plead not guilty and to demand a jury trial. *See id.* ¶ 8.

■ {42} We are concerned about the metropolitan court's decision to impose the maximum sentence for another reason. Al-

though the State asserts that there is no support in the record for Defendant's argument that the judge displayed animosity toward Defendant at the sentencing hearing because of his decision to go to trial, we are not persuaded. While the State contends that the judge considered proper factors such as Defendant's record and belated admission, we are concerned that the judge may have made erroneous comments about Defendant's five prior arrests for DWI. Arrests not leading to convictions can be considered by a sentencing judge in determining whether to impose or defer a sentence when they relate to a defendant's pattern of conduct. *State v. Montoya*, 91 N.M. 425, 427–28, 575 P.2d 609, 611–12 (Ct.App.1978) (holding that when arrests not leading to convictions were interspersed with several convictions, and the presentence report also showed long standing use of heroin and many arrests due to the defendant's heroin problem, prior arrests were properly considered). To the extent that the judge stated that the arrests indicated Defendant had a problem with alcohol consumption, the comments appear to be proper. However, the judge also commented that Defendant had not served any time on the prior arrests, that the cases were not dismissed on the merits, and that Defendant was given a break. In the context of this appeal, those comments could be construed as another indication that the judge intended to punish Defendant for exercising his right to go to trial not only in this case but in previous cases and for past arrests that did not result in conviction. A defendant's record of arrests, without convictions, "may be highly relevant in determining the type and extent of punishment." *Id.* at 428, 575 P.2d at 612. However, it is fundamental that an accused must be tried and sentenced only for the offense charged. *See State v. Wilson*, 97 N.M. 534, 539, 641 P.2d 1081, 1086 (Ct.App. 1982).

{43} A court's authority to sentence is limited by statute. *State v. Martinez*, 1998–NMSC–023, ¶ 12, 126 N.M. 39, 966 P.2d 747. Here, the metropolitan court imposed a sentence within its statutory authority, so it is difficult to say that Defendant was prejudiced by the court's erroneous references to Defendant's prior arrests. But because the judge's remarks taken as a whole raise concerns about whether the judge considered improper factors that might infringe on constitutional rights, we think the appropriate remedy is to remand for resentencing. *State v. Boone*, 293 N.C. 702, 239 S.E.2d 459, 465 (1997) (holding that when it can be reasonably inferred from language of the trial court that a sentence was imposed at least in part because the defendant insisted on a trial by jury, a defendant's constitutional right to trial by jury has been abridged and a new sentencing hearing must result).

**CONCLUSION**

{44} We conclude that in revoking the conditions of release and requiring Defendant to begin serving his mandatory sentence immediately, the remarks of the metropolitan court indicated that it improperly considered Defendant's exercise of his constitutional right to a jury trial and improperly interfered with Defendant's right to appeal. This chilling of Defendant's constitutional rights to plead not guilty, to a trial by jury, and to appeal was an abuse of discretion. We therefore vacate Defendant's sentence and remand for re-sentencing.

{45} **IT IS SO ORDERED.**

WE CONCUR: JAMES J. WECHSLER and MICHAEL E. VIGIL, Judges.