STATE V. MARTINEZ

This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**STATE OF NEW MEXICO,**
**Plaintiff-Appellee,**
**v.**
**WILLIAM MARTINEZ,**
**Defendant-Appellant.**

Docket No. A-1-CA-35560
COURT OF APPEALS OF NEW MEXICO
March 7, 2019

APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY, Karen L. Townsend, District Court Judge

**COUNSEL**

Hector H. Balderas, Attorney General, Santa Fe, NM, John J. Woykovsky, Assistant Attorney General, Albuquerque, NM, for Appellee

Bennett J. Baur, Chief Public Defender, Allison H. Jaramillo, Assistant Appellate Defender, Santa Fe, NM, for Appellant

**JUDGES**

BRIANA H. ZAMORA, Judge. WE CONCUR:  J. MILES HANISEE, Judge, JENNIFER L. ATTREP, Judge

**AUTHOR:** BRIANA H. ZAMORA

**MEMORANDUM OPINION**

**B. ZAMORA, Judge.**

**{1}**     A jury convicted Defendant William Martinez of aggravated fleeing a law enforcement officer (aggravated fleeing), contrary to NMSA 1978, Section 30-22-1.1 (2003). On Defendant's appeal, we hold that (1) there was sufficient evidence Defendant drove in a manner that endangered the life of another; (2) the admission at trial of Defendant's municipal court convictions arising from this incident does not

constitute error; and (3) the district court properly sentenced Defendant as a habitual offender based on his prior felony conviction resulting from his plea in a juvenile proceeding. We affirm.

**BACKGROUND**

**{2}** Defendant's conviction stems from a high-speed pursuit that ensued after he fled from Officer Devon Conroy. At approximately 4:00 a.m., Officer Conroy, wearing his full uniform and badge and driving his marked patrol car, observed Defendant driving his truck on a dirt road without a license plate light. Defendant's truck began spinning around in a circular motion, creating a dust cloud. Increasing his speed, Defendant drove westbound onto an asphalt road into a residential community. Officer Conroy followed Defendant and activated his emergency lights, but Defendant failed to stop. Officer Conroy, following Defendant at sixty-eight miles per hour, drove through a patch of dirt in the road where the asphalt had been removed. As Officer Conroy pursued Defendant, another dust cloud created by Defendant's truck obstructed the officer's view. The dirt portion of the roadway was slightly curved, a circumstance which, combined with the reduced visibility occasioned by the dust cloud, caused Officer Conroy to lose control of his vehicle, which spun around approximately 180 degrees before coming to rest. At the same time, Defendant's truck veered off the roadway. As Defendant drove back onto the roadway, his truck grazed the passenger's side of Officer Conroy's patrol car. In addition to his emergency lights, Officer Conroy then activated his sirens and continued pursuing Defendant. Defendant again sped through residential streets, this time driving through three stop signs.

**{3}** Defendant next proceeded northbound on a highway. At a speed of approximately eighty miles per hour, Defendant passed an SUV that was stopped at an intersection adjoining the highway. Increasing his speed to approximately ninety-five miles per hour, Defendant passed a semi-truck that was driving northbound in the right-hand lane. As Defendant approached the semi-truck, he drifted into its lane, then swerved back into his own lane immediately before he passed the semi-truck. Throughout the pursuit, Officer Conroy observed that Defendant was having difficulty staying within his own traffic lane. The pursuit ultimately came to an end when Defendant pulled into a residential driveway and jumped from his truck while it was still in motion. Defendant's truck became immobilized after striking a fence and trampoline. Defendant fled on foot, and Officer Conroy eventually found him hiding under a mobile home.

**{4}** Defendant was charged in district court with aggravated fleeing, and in municipal court with possession of drug paraphernalia and various traffic offenses. Defendant pleaded guilty to the charges in municipal court and served ten days in jail.

**{5}** At trial, the State, without objection, admitted the municipal court judgment and sentence. On that document, lines intended to identify defense counsel and the prosecutor or prosecuting officer were left blank. No additional pleadings from the municipal court proceedings were admitted at trial, nor were they made part of the

record. During trial, Officer Conroy testified about the municipal court proceedings, stating that he "told [his] side of the story, and [Defendant] was standing there." The officer recounted that Defendant said, "Yup, that's pretty much what happened," and then he pleaded guilty.

**{6}** The jury returned a guilty verdict on the sole count of aggravated fleeing. Defendant was sentenced to eighteen months imprisonment on the underlying charge and an additional eight years of imprisonment based on his status as a habitual offender. Defendant filed a motion to reconsider his sentence, which was denied.

## DISCUSSION

### I.      Aggravated Fleeing a Law Enforcement Officer

**{7}** Defendant first argues that his conviction for aggravated fleeing is not supported by sufficient evidence. We review whether there is sufficient evidence to support Defendant's conviction "from a highly deferential standpoint." *State v. Dowling*, 2011-NMSC-016, ¶ 20, 150 N.M. 110, 257 P.3d 930. "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 (internal quotation marks and citation omitted). We will disregard all evidence and inferences that support a contrary result. *See State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829.

**{8}** Defendant solely contests whether there is sufficient evidence that he "actually" endangered the life of another, as required by the aggravated fleeing statute. The State counters that the aggravated fleeing statute does not require "evidence of a near collision" nor does it require actual endangerment of an identifiable motorist. Even if actual endangerment is required, the State maintains there is sufficient evidence that other motorists were actually endangered.

**{9}** Aggravated fleeing a law enforcement officer consists of a "person willfully and carelessly driving his vehicle *in a manner that endangers the life of another person* after being given a visual or audible signal to stop . . . by a uniformed law enforcement officer in an appropriately marked law enforcement vehicle." Section 30-22-1.1(A) (emphasis added); *see also* UJI 14-2217 NMRA (stating that, to sustain an aggravated fleeing conviction, the state must prove beyond a reasonable doubt that "[t]he defendant drove willfully and carelessly in a manner that endangered the life of another person"). The aggravated fleeing statute does not explicitly define what constitutes endangerment. *State v. Vest*, 2018-NMCA-060, ¶ 9, 428 P.3d 287, *cert. granted*, 2018-NMCERT-___ (No. S-1-SC-37210, Sept. 24, 2018). However, during the pendency of this appeal, this Court determined in *Vest* "that the aggravated fleeing statute requires that the [s]tate prove actual endangerment to another person[.]" *Id.* ¶ 10.[1] In particular, we defined

---

[1]In light of the recent holding in Vest, the State's argument that actual endangerment is not required under the aggravated fleeing statute is not well taken. 2018-NMCA-060, ¶ 7.

endangerment to be "the exposure to the peril or harm [that] is an actual or current condition facing the impacted person." *Id.* ¶ 9. While concluding that "potential or future harm" is insufficient, *id.*, we cautioned that the statutory requirement of endangerment should not be so strictly construed as to require a fleeing suspect to drive "within inches of another vehicle" or to avoid a collision by "extraordinary evasive maneuvering." *Id.* ¶ 15.

**{10}** Here, Defendant sped through residential streets, ran stop signs, and sped through a dirt patch in the road causing a dust cloud to obstruct Officer Conroy's view. Both the officer and Defendant lost control of their vehicles. As a result, Defendant's truck made contact with Officer Conroy's patrol car. In addition, while driving approximately ninety-five miles per hour as he approached a semi-truck, Defendant's truck drifted into the semi-truck's lane, and Defendant then swerved his truck back into his lane immediately before passing the semi-truck. This Court has found sufficient evidence of endangerment under circumstances similar to those in this case. *See State v. Coleman*, 2011-NMCA-087, ¶¶ 21-22, 150 N.M. 622, 264 P.3d 523 (holding that the defendant endangered the lives of his passengers and the pursuing officer when he drove through stop signs in a residential area in excess of one hundred miles per hour); *see also State v. Padilla*, 2006-NMCA-107, ¶ 5, 140 N.M. 333, 142 P.3d 921 ("[The d]efendant barely missed colliding with another motorist."), *rev'd on other grounds*, 2008-NMSC-006, ¶ 34, 143 N.M. 310, 176 P.3d 299. From these facts, the jury could have reasonably concluded that Defendant drove in a manner that actually endangered the lives of others, including Officer Conroy.

**{11}** In an attempt to avoid this conclusion, Defendant directs us to Officer Conroy's testimony that he would have discontinued the pursuit had he believed other motorists were in danger and that law enforcement policies prohibited him from endangering others during a pursuit. Defendant's reliance on this testimony is unavailing since "contrary evidence supporting acquittal does not provide a basis for reversal." *State v. Guerra*, 2012-NMSC-027, ¶ 27, 284 P.3d 1076 (alteration, internal quotation marks, and citation omitted). We will not "substitute [our] judgment for that of the fact[-]finder, nor [will we] reweigh the evidence." *State v. Perea*, 2001-NMSC-026, ¶ 5, 130 N.M. 732, 31 P.3d 1006. The jury was, therefore, free to weigh the evidence as it deemed appropriate. Viewing the evidence in the light most favorable to the guilty verdict, we conclude that there was sufficient evidence to support the jury's conclusion that Defendant's driving actually endangered the lives of others.

## II.      Admission of Municipal Court Convictions

**{12}** Defendant next claims the admission at trial of his municipal court convictions arising from this incident violated the presumption of innocence and basic due process rights, as well as the right to counsel. Defendant concedes he did not preserve his objections at trial, but nevertheless asserts that the admission of his judgment and sentence and his statements from the municipal court proceedings amount to structural, plain, and fundamental error. Because Defendant solely asserts constitutional violations, we need not address his claims for plain or structural error. *See State v.*

*Samora*, 2013-NMSC-038, ¶ 5, 307 P.3d 328 (reviewing unpreserved claims of constitutional violations for fundamental error); *State v. Gwynne*, 2018-NMCA-033, ¶ 27, 417 P.3d 1157 (applying plain error "only in evidentiary matters" (internal quotation marks and citation omitted)), *cert. denied*, 2018-NMCERT-___ (No. S-1-SC-36926, Apr. 10, 2018); *State v. Nguyen*, 2008-NMCA-073, ¶ 9, 144 N.M. 197, 185 P.3d 368 ("[S]tructural error is a defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." (internal quotation marks and citation omitted)). We review the admission of the judgment and sentence and Defendant's statements from the municipal court proceedings for fundamental error.

**{13}** The doctrine of fundamental error is an exception to the requirement that a defendant preserve his arguments and objections in the district court. *See State v. Silva*, 2008-NMSC-051, ¶ 11, 144 N.M. 815, 192 P.3d 1192. We apply the doctrine only in exceptional circumstances to prevent a miscarriage of justice. *Id.* ¶ 13. "Accordingly, we will use the doctrine to reverse a conviction only if the defendant's guilt is so questionable that upholding a conviction would shock the conscience, or where, notwithstanding the apparent culpability of the defendant, substantial justice has not been served." *Id.* (internal quotation marks and citation omitted). Defendant has the burden of demonstrating fundamental error. *See State v. Astorga*, 2016-NMCA-015, ¶ 5, 365 P.3d 53. In reviewing a claim for fundamental error, we must first determine whether an error occurred. *Silva*, 2008-NMSC-051, ¶ 11. Only if an error has occurred, do we then consider whether the error was fundamental. *Id.*; *see State v. Cabezuela*, 2011-NMSC-041, ¶¶ 49-52, 150 N.M. 654, 265 P.3d 705 (concluding that because there was no error in the admission of certain testimony at trial there was no need to determine whether the alleged error was fundamental).

**{14}** For the first time on appeal, Defendant claims his constitutional rights were violated by the district court's admission of evidence from "what appeared to be" uncounseled municipal court convictions. Defendant argues that admitting an uncounseled misdemeanor conviction at trial is similar to using an uncounseled misdemeanor conviction to enhance a defendant's sentence, a practice generally disallowed, at least where the underlying proceeding results in a sentence of imprisonment and no valid waiver of counsel was obtained therein. *See State v. Woodruff*, 1997-NMSC-061, ¶¶ 5, 14, 27, 124 N.M. 388, 951 P.2d 605 (explaining that, under United States Supreme Court precedent, "state courts now may use an uncounseled prior misdemeanor conviction to enhance a sentence under a recidivist statute, provided the uncounseled conviction did not result in a sentence of imprisonment"). Defendant, without citation to supporting New Mexico authority, asks us to apply a similar approach in concluding that an uncounseled conviction is inadmissible at trial. But even assuming, as Defendant urges, that an uncounseled municipal court conviction resulting in a jail sentence and obtained without a valid waiver of counsel, is inadmissible in a subsequent district court trial, Defendant has failed to demonstrate that any such error occurred in this case.

**{15}** Here, the municipal court judgment and sentence is ambiguous as to whether Defendant was represented and, if he was not, whether Defendant knowingly and

voluntarily waived his right to counsel. Specifically, as noted, the lines that would normally denote the identities of counsel for the defendant and the municipality were left blank. We will not speculate as to whether Defendant was unrepresented, or alternatively, whether he signed a valid waiver of his right to counsel. *See State v. Reyes*, 2005-NMCA-080, ¶¶ 7-8, 137 N.M. 727, 114 P.3d 407 (stating a defendant has the right to represent himself pro se, as long as he does so knowingly, intelligently, and voluntarily); *State v. Pino*, 1997-NMCA-001, ¶ 1, 122 N.M. 789, 932 P.2d 13 (holding that prior conviction from a criminal proceeding, "where an indigent defendant's waiver of counsel lacked the countersignature of a district public defender, is valid to enhance a later conviction"); *see also* Rule 8-501(A)(4) NMRA (stating a municipal court judge must advise the defendant of "the right, if any, to the assistance of counsel at every stage of the proceedings"); Form 9-401A NMRA (waiver of counsel criminal form for municipal courts). Defendant nonetheless argues it is the State's burden to establish that he knowingly and intelligently waived his right to counsel. While this may be true had Defendant raised the issue during trial—instead of raising it for the first time on appeal—the State would have had an opportunity to respond, or to supplement its presentation of evidence at trial. We can only review matters contained within the record. *See State v. Gilbert*, 1983-NMSC-083, ¶ 22, 100 N.M. 392, 671 P.2d 640. Here, the record is ambiguous, and to grant the relief requested by Defendant, we would have to find fundamental error based on conjecture. Because we cannot ascertain, without speculating, whether Defendant was unrepresented or whether he validly waived his right to counsel, we cannot say that the admission of the municipal court conviction was error. *See State v. Ross*, 2007-NMCA-126, ¶ 10, 142 N.M. 597, 168 P.3d 169 (stating that even where the defendant relies on a claim of fundamental error he still bears the burden of creating an adequate record for review of the issues on appeal).

## III.    Habitual Offender Enhancement

**{16}**    Defendant's final argument is that the district court improperly enhanced his sentence as a habitual offender under NMSA 1978, Section 31-18-17 (2003), by relying upon an adult conviction resulting from a juvenile plea agreement. The issue before this Court is the proper interpretation of NMSA 1978, Section 32A-2-18(C) (1996), the statutory provision relating to judgments under the Delinquency Act. We review questions of statutory interpretation de novo. *State v. Duhon*, 2005-NMCA-120, ¶ 10, 138 N.M. 466, 122 P.3d 50; *see also State v. Leon*, 2013-NMCA-011, ¶ 43, 292 P.3d 493 ("Whether [the d]efendant's previous felony conviction can be used for the purposes of sentence enhancement under Section 31-18-17 is a question of law that we review de novo.").

## A.  Section 32A-2-18 Applies to Convictions Resulting From a Plea

**{17}**    In June 1996, when he was a juvenile charged as a youthful offender, Defendant pleaded guilty to several violent felonies and was sentenced as an adult. The district court enhanced his sentence in this case, as a habitual offender, based on this prior conviction. A habitual offender pursuant to Section 31-18-17(A), is a person convicted of at least one prior felony "that was part of a separate transaction or occurrence." In order

to enhance Defendant's sentence as a habitual offender, the State had to prove that Defendant is the same person who has been convicted of a prior felony and that "less than ten years has passed since [he] completed serving [his] sentence, probation, or parole." *State v. Clements*, 2009-NMCA-085, ¶ 22, 146 N.M. 745, 215 P.3d 54. Under the Delinquency Act, a "judgment in proceedings on a petition . . . resulting in a juvenile disposition shall not be deemed a conviction of [a] crime[.]" Section 32A-2-18(A). However, Section 32A-2-18 goes on to state:

> B. If a judgment resulting from a youthful offender or serious youthful offender proceeding under the Delinquency Act results in an adult sentence, a record of the judgment shall be admissible in any other case or proceeding in any other court involving the youthful offender or serious youthful offender.

> C. If a judgment on a proceeding under the Delinquency Act results in an adult sentence, the *determination of guilt at trial* becomes a conviction for purposes of the Criminal Code.

Section 32A-2-18(B), (C) (emphasis added). Thus, where "[the d]efendant was sentenced as an adult, rather than adjudicated delinquent, and was convicted of a felony for the purposes of the Criminal Code, the Habitual Offender Statute is applicable." *Leon*, 2013-NMCA-011, ¶ 45.

**{18}** Defendant does not dispute that he entered into a plea agreement for felony offenses as a juvenile. Nor does he contend that felony convictions arising from acts committed by juveniles do not count for purposes of adult habitual offender enhancements. *See id.* ¶ 44 ("[T]he Habitual Offender Statute simply applies to anyone convicted of a felony."). Rather, he argues that the plea agreement did not result in an adult conviction. He claims his sentence was wrongfully enhanced because the language of Section 32A-2-18(C) is unambiguous and permits only youthful offenders found guilty *at trial* to be sentenced as adults. The State responds that Defendant is erroneously interpreting Section 32A-2-18(C) as applying only to convictions resulting from a trial. The State argues that Subsection (C) cannot be read in isolation, but rather, must be read in the context of the other statutory sections.

**{19}** We must discern which of the competing interpretations of Section 32A-2-18(C) is correct. If a statute is unambiguous, we give effect to "the plain meaning of the words of [the] statute, unless this leads to an absurd or unreasonable result." *State v. Marshall*, 2004-NMCA-104, ¶ 7, 136 N.M. 240, 96 P.3d 801. When interpreting a statute, we do not simply look to the statute's language, we also consider the background, history, and overall structure of the statute and "the particular statute's function within a comprehensive legislative scheme[.]" *State v. Rivera*, 2004-NMSC-001, ¶ 13, 134 N.M. 768, 82 P.3d 939. If the result would be absurd, unreasonable, or contrary to the spirit of the statute, we "will not employ a formalistic and mechanical statutory construction." *State v. Moya*, 2007-NMSC-027, ¶ 6, 141 N.M. 817, 161 P.3d 862 (internal quotation marks and citation omitted). Rather than adopting a construction that would render the

statute's application absurd, we construe the statute according to its obvious spirit. *Id.* When doing so, "courts may substitute, disregard or eliminate, or insert or add words to a statute." *Id.* (internal quotation marks and citation omitted). We must construe a statute in its entirety, so that each part of the statute is given meaning and no part is rendered superfluous. *Rivera*, 2004-NMSC-001, ¶ 18.

**{20}** As we more fully explain below, applying the plain meaning rule to the words "determination of guilt at trial" in Section 32A-2-18(C) would lead to an absurd result, would be inconsistent with other provisions of Section 32A-2-18, and would be contrary to the "statute's function within a comprehensive legislative scheme." *See Rivera*, 2004-NMSC-001, ¶ 13. First, construing Section 32A-2-18(C) as applicable only to convictions following trial, and not to convictions made pursuant to plea agreements, would—on several bases—lead to absurd results. Such an interpretation would unjustifiably punish those juveniles who exercise their constitutional right to proceed to trial, and in the process, run afoul of the prohibition against imposing "a harsher sentence merely because the defendant pleads not guilty and exercises his right to a jury trial." *State v. Bonilla*, 2000-NMSC-037, ¶ 12, 130 N.M. 1, 15 P.3d 491 (internal quotation marks and citation omitted); *see State v. Maestas*, 2007-NMCA-155, ¶¶ 26, 44, 143 N.M. 104, 173 P.3d 26 (holding that the judge's "policy of allowing those who plead guilty to remain free pending sentencing and requiring those who were found guilty after electing to go to trial to begin serving their mandatory time" was an abuse of discretion). "A practice which discourages the Fifth Amendment right not to plead guilty, which deters the Sixth Amendment right to demand a jury trial and which chills the assertion of these constitutional rights by penalizing those who choose to exercise them is patently unconstitutional." *Bonilla*, 2000-NMSC-037, ¶ 7 (internal quotation marks and citation omitted). The determination of guilt pursuant to a plea has the same legal force as the determination of guilt by trial. A guilty plea "is not simply a strategic choice; it is itself a conviction[.]" *Florida v. Nixon*, 543 U.S. 175, 187 (2004) (internal quotation marks and citation omitted). We fail to identify a basis upon which the Legislature might construct a punitive framework designed to address ongoing recidivism in a particular class of offenders and then opt to excuse felony convictions—even those committed by juveniles—so long as the defendant entered into a plea agreement with the state. Thus, it would lead to an absurd result for Section 32A-2-18(C) to apply disparate treatment upon convictions obtained after trial and those obtained after a plea.

**{21}** Second, when read in its entirety, Section 32A-2-18 distinguishes youthful offenders who receive an adult sentence from those who do not, regardless of whether the determination of guilt is the result of a plea or trial. Under the statutory framework, when the proceedings result in an adult sentence, the judgment is no longer considered a juvenile adjudication. *See State v. Nanco*, 2012-NMCA-109, ¶ 4, 288 P.3d 527 ("A youthful offender is a delinquent child subject to adult or juvenile sanctions who is fourteen to eighteen years of age at the time of the offense and who is adjudicated for [a] specified felony offense[.]" (internal quotation marks omitted)). Moreover, Section 32A-2-18(B) specifically discusses the admissibility of adult sentences in other proceedings and does not limit its applicability to convictions obtained only after a trial. Rather, Subsection (B) applies to any adult convictions imposed on juveniles. Section

32A-2-18(B). If the Legislature intended for adult convictions resulting from a plea to be inadmissible in other proceedings, it could have included such exclusionary language in Subsection (B). Reading Subsections (B) and (C) together, a conviction for a juvenile sentenced as an adult is admissible in other proceedings, even if the conviction resulted from a plea agreement. Section 32A-2-18(B), (C).

**{22}** Finally, we look to Section 32A-2-18(C) and its relation to other relevant statutory provisions. Other statutes explicitly referencing the potential penalties for a youthful offender do not distinguish between a youthful offender who is adjudicated guilty at trial and an offender who enters into a plea agreement. *See, e.g.*, NMSA 1978, § 32A-2-3(J) (2009) (defining "youthful offender" in the Delinquency Act as "a delinquent child subject to adult or juvenile sanctions"); NMSA 1978, § 32A-2-20(A), (E) (2009) ("The court has the discretion to invoke either an adult sentence or juvenile sanctions on a youthful offender. . . . If the court invokes an adult sentence, the court may sentence the child to less than, but shall not exceed, the mandatory adult sentence."); NMSA 1978, § 31-18-15.2(B) (1996) (defining "youthful offender" in the Criminal Sentencing Act as "a delinquent child subject to adult or juvenile sanctions"); Rule 10-226(D)(2) NMRA (stating that when the children's court accepts a plea agreement from a youthful offender, "the court shall inform the respondent child that it may impose any disposition or sentence that is authorized by law, up to and including the maximum adult sentence"); Form 10-731 NMRA (stating that a valid waiver of arraignment requires that the child understand the charges and potential penalties which range "from being sentenced as an adult to prison time, to a disposition as a delinquent child in need of care or supervision"). Thus, interpreting Section 32A-2-18(C), as Defendant proposes, would be in contradiction of various other statutory provisions. *See Rivera*, 2004-NMSC-001, ¶ 18 (stating that "[w]e are generally unwilling to construe one provision of a statute in a manner that would make other provisions null or superfluous"). We hold that Section 32A-2-18(C) applies to a juvenile sentenced as an adult regardless of whether the conviction was the result of a plea or trial.

**{23}** Since it is undisputed that Defendant was sentenced as an adult for felony offenses he committed as a juvenile, the district court correctly used that earlier conviction to sentence Defendant as a habitual offender. Section 31-18-17 (providing for enhancement of basic sentence for prior felony convictions); *see Leon*, 2013-NMCA-011, ¶ 45 ("Because [the d]efendant was sentenced as an adult, rather than adjudicated delinquent, and was convicted of a felony for the purposes of the Criminal Code, the Habitual Offender Statute is applicable."). Defendant had three usable prior felony convictions for purposes of habitual offender enhancement; therefore, the district court properly enhanced his sentence by eight years. *See* § 31-18-17(C).

## B. The Holding in *State v. Jones* Does Not Apply Retroactively

**{24}** Defendant claims his prior conviction as a youthful offender cannot be used as a habitual offender enhancement because he was not afforded his right to an amenability hearing. In *State v. Jones*, our Supreme Court held that a youthful offender could not waive his statutory right to an amenability hearing, even pursuant to a plea agreement.

2010-NMSC-012, ¶ 46, 148 N.M. 1, 229 P.3d 474. However, Defendant's claim disregards that the *Jones* court explicitly stated its holding would not apply retroactively.

**{25}** Our Supreme Court stated, "[w]e recognize that the rule that we announce today is a new rule and that we must determine how it is to be applied[,]" and then concluded, "[b]ecause we see no justification for applying today's rule retroactively, we hold that the rule applies only to this and all other cases in which a verdict has not been reached and those cases on direct review in which the issue was raised and preserved below." *Id.* ¶ 49 (internal quotation marks and citation omitted). Defendant was sentenced in 1996, which was years prior to our Supreme Court's 2010 decision in *Jones*. As such, *Jones* is inapplicable to Defendant's prior conviction as a youthful offender.

**CONCLUSION**

**{26}** For the foregoing reasons, we affirm.

**{27}  IT IS SO ORDERED.**

**BRIANA H. ZAMORA, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Judge**

**JENNIFER L. ATTREP, Judge**