IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2012-NMSC-027

Filing Date: August 9, 2012

Docket No. 33,052

STATE OF NEW MEXICO,

        Plaintiff-Appellee,

v.

LUCIANO P. GUERRA,

        Defendant-Appellant.

APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY
Teddy L. Hartley, District Judge

Liane E. Kerr, L.L.C.
Liane E. Kerr
Albuquerque, NM

for Appellant

Gary K. King, Attorney General
Olga Serafimova, Assistant Attorney General
Santa Fe, NM

for Appellee

OPINION

DANIELS, Justice.

{1}     Defendant was convicted of first-degree murder and tampering with evidence in the fatal stabbing of Andrew Gama during a fight at a Clovis apartment complex in March 2010. In his direct appeal to this Court, he argues that (1) there was insufficient evidence to support his conviction for tampering with evidence, (2) the district court abused its discretion by denying his motion for a new trial when two defense exhibits left on counsel table after closing arguments were not included with other exhibits provided to the jury during deliberation, (3) he received ineffective assistance of counsel because his attorney failed to

1

ensure the return of the two exhibits for delivery to the jury room, (4) there was insufficient evidence to support the first-degree murder conviction, and (5) through various other claimed errors the district court denied him due process of law.

{2}    In this Opinion, we clarify the standard for sufficiency of evidence to support tampering-with-evidence convictions and reverse Defendant's tampering conviction. We reject the remainder of Defendant's claims and uphold his first-degree murder conviction.

## I.    BACKGROUND

{3}    Defendant was at a party at the Clovis apartment of Erica Nañez on the night of the killing. While at the party, Erica and four other witnesses saw Defendant playing with a folding white pocketknife that Defendant claimed he carried for protection. At one point, Erica asked Defendant to put the knife away, which he apparently did.

{4}    Around midnight, a group of uninvited people unexpectedly showed up at the party, and a fight broke out between one of them and one of Erica's guests. A separate fight took place between Defendant and the uninvited victim, Andrew Gama, who apparently had been in a fight with Defendant's cousin a few days before. According to most of the witnesses at trial, the fight between Defendant and the victim was "one on one," and the victim did not have a weapon.

{5}    When someone yelled that the police were coming, the fighting stopped and the uninvited group began running away. The victim, bleeding heavily, fell to the ground while running and was helped to a car by a friend, who drove the victim to the hospital where the victim later died.

{6}    Defendant returned to Erica's apartment, where several witnesses testified that Defendant said "I think I stabbed that fool seven or eight times. I stabbed that fool." When asked to describe how Defendant was acting after the fight, Erica told the jury that Defendant and his companions were acting "fine, like nothing, like high-fiving each other."

{7}    The autopsy of the victim revealed that he suffered thirteen stab wounds in the left side of his chest and that the wounds were consistent with a single-edged knife. Stab wounds to the victim's heart, left lung, and spleen were the cause of death. The victim had no injuries to his hands or arms, and marijuana and alcohol were found in his blood. The police searched Defendant's house but could not find the clothes Defendant wore to the party or the knife used to inflict the fatal wounds.

{8}    The jury convicted Defendant of first-degree murder and tampering with evidence, and the district court sentenced Defendant to life in prison for the murder and three years in prison, concurrently, for tampering. Because Defendant received a life sentence, he appealed directly to this Court. *See* N.M. Const. Art. VI, § 2 ("Appeals from a judgment of the district court imposing a sentence of death or life imprisonment shall be taken directly

to the supreme court."); *accord* Rule 12-102(A)(1) NMRA.

## II.     DISCUSSION

### A.     The Evidence Was Insufficient to Convict Defendant of Tampering with Evidence.

**{9}**     Defendant argues that his conviction for tampering with evidence should be overturned because the facts that Defendant had a knife and that no knife was later recovered after the killing are, by themselves, insufficient as a matter of law to support the conviction. The State concedes that the evidence was insufficient as a matter of law to uphold Defendant's tampering conviction; and while we are not bound by this concession, *see State v. Foster*, 1999-NMSC-007, ¶ 25, 126 N.M. 646, 974 P.2d 140, *abrogated on other grounds by State v. Frazier*, 2007-NMSC-032, ¶¶ 31, 35, 142 N.M. 120, 164 P.3d 1, we agree.

### 1.     *Standard of Review*

**{10}**     "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Riley*, 2010-NMSC-005, ¶ 12, 147 N.M. 557, 226 P.3d 656 (internal quotation marks and citation omitted). The reviewing court "view[s] the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. "The question before us as a reviewing [c]ourt is not whether we would have had a reasonable doubt [about guilt] but whether it would have been impermissibly unreasonable for a jury to have concluded otherwise. *See State v. Rudolfo*, 2008-NMSC-036, ¶ 29, 144 N.M. 305, 187 P.3d 170.

### 2.     *Tampering with Evidence Requires Proof in Some Form of a Defendant's Specific Intent to Tamper.*

**{11}**     In order to prove that Defendant tampered with evidence, the State had to prove that (1) Defendant hid physical evidence; (2) he did so with the intent to prevent his apprehension, prosecution, or conviction; and (3) this happened in New Mexico on or about the date specified in the criminal information. UJI 14-2241 NMRA; *see* NMSA 1978, § 30-22-5(A) (2003).

**{12}**     This Court has previously recognized that the crime of tampering with evidence requires evidence that the defendant specifically intended to tamper with evidence. In *State v. Silva*, the state successfully argued at trial that the defendant tampered with evidence solely because (1) the defendant had a gun at the scene of the crime, (2) a gun was used to murder the victim, (3) the murder weapon was removed from the scene, and (4) the murder weapon was never recovered. 2008-NMSC-051, ¶ 17, 144 N.M. 815, 192 P.3d 1192. We

3

explained that "[t]ampering with evidence is a specific intent crime, requiring sufficient evidence from which the jury can infer that the defendant acted with an intent to prevent apprehension, prosecution or conviction of any person or to throw suspicion of the commission of a crime upon another." *Id.* ¶ 18 (internal quotation marks and citation omitted). We held that the evidence was insufficient as a matter of law to sustain the conviction because the state "offered no direct evidence to show that [the d]efendant intended to disrupt the police investigation, nor did it provide any evidence, circumstantial or otherwise, of an overt act on [the d]efendant's part from which the jury could infer such intent." *Id.* ¶ 19. Instead, the state "effectively asked the jury to speculate that an overt act of . . . hiding [the murder weapon] had taken place, based solely on the fact that such evidence was never found." *Id.* (alterations in original) (internal quotation marks and citation omitted).

{13}  In explaining our conclusion, we noted that "[i]ntent is subjective and is almost always inferred from other facts in the case, as it is rarely established by direct evidence." *Id.* ¶ 18 (alteration in original) (internal quotation marks and citation omitted). But after that clear discussion of the proper role of circumstantial evidence, we concluded by saying: "However, absent both direct evidence of a defendant's specific intent to tamper and evidence of an overt act from which the jury may infer such intent, the evidence cannot support a tampering conviction." *Id.*

{14}  Taken out of context, that single sentence could be misconstrued as requiring *both* direct and circumstantial evidence of intent to tamper, instead of *either*. Such an unprecedented dual requirement would make prosecution of tampering with evidence possible only when the defendant has explicitly admitted that the act of tampering was committed with the intent to elude capture or prosecution, which has never been the standard. We did not intend such a reading of the law. *Silva* should have said that "absent either direct evidence of a defendant's specific intent to tamper or evidence from which the factfinder may infer such intent, the evidence cannot support a tampering conviction." *See State v. Nathaniel Duran*, 2006-NMSC-035, ¶ 16, 140 N.M. 94, 140 P.3d 515, noting that this Court's reversal of a tampering conviction for insufficiency of supporting evidence

> does not mean that direct evidence is necessary to prove tampering with evidence. Statements by defendants and witnesses regarding the disposition of evidence may allow a jury to reasonably infer an overt act and intent, as may many other kinds of circumstantial evidence that would tend to prove a defendant acted to tamper with evidence and in so acting intended to thwart a police investigation. Rather, we hold that it is the State's burden to prove each element of the crime beyond a reasonable doubt, and the proof offered here, with no direct or circumstantial evidence regarding an overt act and no reasonable way for a jury to infer intent, falls short of that burden.

{15}  Accordingly, we clarify *Silva* insofar as it may have inadvertently suggested that the state must always present both direct and circumstantial evidence of a defendant's specific

4

intent to tamper in order to convict the defendant of tampering with evidence.

**{16}** Having clarified *Silva*, we conclude that its bedrock principle applies in this case: The State cannot convict Defendant of tampering with evidence simply because evidence that must have once existed cannot now be found. As in *Silva*, the State in this case alleged that Defendant tampered with evidence based on the fact that (1) Defendant had a weapon at the scene of the crime, (2) Defendant used that weapon to kill someone, (3) the weapon was removed from the scene of the crime, and (4) the weapon was never recovered. And as in *Silva*, the State in this case essentially asked the jury to infer that an overt, intentional act of hiding the weapon had taken place based solely on the fact that the police never found the weapon. We rejected such facts as insufficient evidence as a matter of law to support a tampering with evidence conviction in *Silva*, and we do so here as well. Accordingly, we reverse Defendant's conviction for tampering with evidence.

**B.      Any Error in Not Sending Two Exhibits to the Jury Room Was Harmless.**

**{17}** Rule 5-609(C) NMRA provides that "[u]pon its request to review any exhibit during its deliberations, the jury shall be furnished all exhibits received in evidence." The committee commentary explains that the rule is intended to avoid "undue emphasis being placed on one of the exhibits." While Defendant has provided no record reference that would indicate the jury ever made such a request in this case, the parties and the court below seemed to agree that two exhibits related to the victim's autopsy—a blood toxicology report and a drug analysis report—were inadvertently left on defense counsel's table when all the other exhibits were given to the deliberating jury. The district court denied Defendant's motion for new trial based on the claimed violation of Rule 5-609, finding that while the apparent omission of the exhibits was "regrettable," the error was "technical" and justice would not be served in reversing the jury verdict on the basis of such a "minor infraction of the rules." Defendant now argues that he was denied a fair trial and that the district court abused its discretion when it denied his motion for a new trial.

**1.      *Standard of Review***

**{18}** "The trial court has broad discretion in granting or denying a motion for new trial, and such an order will not be reversed absent clear and manifest abuse of that discretion." *State v. Chavez*, 98 N.M. 682, 684, 652 P.2d 232, 234 (1982). "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the trial court abused its discretion by its ruling unless we can characterize [the ruling] as clearly untenable or not justified by reason." *State v. Rojo*, 1999-NMSC-001, ¶ 41, 126 N.M. 438, 971 P.2d 829 (1999) (internal quotation marks and citation omitted).

**2.      *Harmless Error***

**{19}** "[W]here a defendant has established a violation of statutory law or court rules, non-

5

constitutional error review is appropriate." *State v. Barr*, 2009-NMSC-024, ¶ 53, 146 N.M. 301, 210 P.3d 198, *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, ¶ 37, 275 P.3d 110. "A reviewing court should only conclude that a non-constitutional error is harmless when there is no reasonable *probability* the error affected the verdict." *Id.* (emphasis in original). "[N]on-constitutional error is reversible only if the reviewing court is able to say, in the context of the specific evidence presented at trial, that it is reasonably probable that the jury's verdict would have been different but for the error." *Id.* ¶ 54.

**{20}** By explaining that the complained of error was a "technical" violation, the district court made it clear that its decision to deny Defendant's motion for a new trial was based on the conclusion that the error was harmless. This conclusion is not "clearly against the logic and effect of the facts and circumstances of the case." *Rojo*, 1999-NMSC-001, ¶ 41 (internal quotation marks and citation omitted).

**{21}** There is no reasonable probability that the jury's verdict would have been different if the jury had access to the two exhibits during deliberation. The jury was well aware of their contents. An expert medical witness testified at trial about the reports and testified that the information in the report was not sufficient for her to conclude whether the victim was impaired or whether the alcohol and marijuana had any impact on the victim's ability to tolerate pain. Therefore, the reports were useful only to prove that the victim had alcohol and marijuana in his system, facts the State never challenged. And because defense counsel used the admitted exhibits in closing argument, the jury had very recently been reminded of the facts contained in them. After hearing testimony and argument about the two admitted exhibits, the jury never displayed sufficient interest in them to ask for them. Viewing all the circumstances, we conclude that the error was harmless and that the district court did not abuse its discretion in denying Defendant's motion for a new trial on that ground.

## C.     Defendant Received Effective Assistance of Counsel.

**{22}** Defendant also argues that if the district court did not abuse its discretion by denying his motion for a new trial, then his trial attorney's failure to send the exhibits back to the jury amounted to ineffective assistance of counsel.

**{23}** "Questions of law or questions of mixed fact and law, . . . including the assessment of effective assistance of counsel, are reviewed de novo." *Duncan v. Kerby*, 115 N.M. 344, 347-48, 851 P.2d 466, 469-70 (1993). "Under the Sixth Amendment, criminal defendants are entitled to reasonably effective assistance of counsel." *State v. Garcia*, 2011-NMSC-003, ¶ 33, 149 N.M. 185, 246 P.3d 1057 (internal quotation marks and citation omitted). "Ordinarily, a claim of ineffective assistance of counsel has two parts." *Rael v. Blair*, 2007-NMSC-006, ¶ 10, 141 N.M. 232, 153 P.3d 657 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). First, "[a] defendant must show counsel's performance was deficient." *Id.* (internal quotation marks and citation omitted). Second, a defendant must show "that the deficient performance prejudiced the defense." *Id.* (internal quotation marks and citation omitted). "Failure to prove either prong of the test defeats a claim of ineffective assistance

of counsel." *State v. Reyes*, 2002-NMSC-024, ¶ 48, 132 N.M. 576, 52 P.3d 948, *abrogated on other grounds by Allen v. LeMaster*, 2012-NMSC-001, ¶ 36, 267 P.3d 806. "With regard to the prejudice prong, generalized prejudice is insufficient. . . . A defendant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Bernal*, 2006-NMSC-050, ¶ 32, 140 N.M. 644, 146 P.3d 289 (internal quotation marks and citations omitted). "If a defendant does not make such a showing, the defendant has not carried his or her burden, and the presumption of effective assistance controls." *State v. Harrison*, 2000-NMSC-022, ¶ 61, 129 N.M. 328, 7 P.3d 478 (internal quotation marks and citation omitted).

**{24}** Just as we previously determined that any error in not sending the two exhibits to the jury in the context of this case was harmless, we conclude that Defendant cannot demonstrate the requisite prejudice to prevail on his ineffective assistance of counsel claim.

**D.** **The Jury Received Sufficient Evidence to Convict Defendant of First-Degree Murder.**

**{25}** Defendant argues that the evidence was insufficient to support his first-degree murder conviction because the jury ignored evidence that tended to show Defendant did not deliberate before he killed.

**{26}** In order to convict Defendant of first-degree murder, the jury had to find beyond a reasonable doubt that (1) Defendant killed Andrew Gama, (2) he did so with the deliberate intention of taking the victim's life, and (3) this happened in New Mexico on or about the date specified in the criminal information. UJI 14-201 NMRA; *see* NMSA 1978, § 30-2-1(A)(1) (1994).

**{27}** Defendant's argument centers around his claim at trial that he was "jumped," which he maintains is proof that he acted on a rash impulse and did not deliberate. But because the jury is free to reject Defendant's version of the facts, "[c]ontrary evidence supporting acquittal does not provide a basis for reversal." *See Riley*, 2010-NMSC-005, ¶ 12 (internal quotation marks and citation omitted). Instead, we consider the evidence that supports the verdict in this case. *Id.*

**{28}** The requisite state of mind for first degree murder is a "deliberate" intention to kill. *See* § 30-2-1(A)(1); *see also* UJI 14-201. "The word deliberate means arrived at or determined upon as a result of careful thought and the weighing of the consideration for and against the proposed course of action." UJI 14-201. Though deliberate intent requires a "calculated judgment" to kill, the weighing required for deliberate intent "may be arrived at in a short period of time." *Id.* In determining whether a defendant made a calculated judgment to kill, the jury may infer intent from circumstantial evidence; direct evidence of a defendant's state of mind is not required. *See Nathaniel Duran*, 2006-NMSC-035, ¶ 7.

**{29}** The jury received sufficient evidence to find that Defendant deliberated before he

7

killed. The medical evidence suggested and the State argued that Defendant pinned the victim's left arm above his head, leaving that side of his chest exposed and rendering the victim unable to defend himself from Defendant's attack. Such an attack on a victim who cannot defend himself may be sufficient for the jury to infer deliberate intent. *See Cunningham*, 2000-NMSC-009, ¶ 28 (inferring deliberate intent when the defendant killed an incapacitated and defenseless victim). The jury also heard evidence that Defendant stabbed the victim thirteen times and that many of the wounds were to vital organs, evidence that supports a finding of "overkill." *See State v. Flores*, 2010-NMSC-002, ¶¶ 21-22, 147 N.M. 542, 226 P.3d 641 (including an attempt at "overkill" in the evidence sufficient to uphold a finding of intent). Finally, the jury learned that Defendant expressed no remorse after killing the victim, saying "I think I stabbed that fool seven or eight times," celebrating, and acting as if nothing had happened after he returned from the attack. *See Nathaniel Duran*, 2006-NMSC-035, ¶ 9 (inferring deliberate intent in part from the defendant's statements after the killing that he "hurt a lady and stabbed her eight or nine times" and that he "straight up murdered some bitch" (internal quotation marks and citation omitted)); *see also State v. Smith*, 76 N.M. 477, 482, 416 P.2d 146, 150 (1966) (explaining that a jury may consider "the animus of the accused toward the deceased" in determining deliberate intent). Accordingly, we conclude that the evidence was sufficient to support Defendant's conviction for willful and deliberate murder.

**E.      Defendant's Other Due Process of Law Claims Lack Merit.**

**{30}**    Defendant also argues that the district court abused its discretion when it denied his motion for a new trial based on claims he was denied due process when (1) the district court improperly released a medical expert from subpoena, (2) the State's reenactment of the murder before the jury was improper, (3) the prosecutor made derogatory comments about defense counsel to a prosecution witness, and (4) the State misrepresented a witness's testimony in its closing argument. Because Defendant does not demonstrate any harm from these alleged errors, we conclude that he was not denied due process of law.

**{31}**    "The trial court has broad discretion in granting or denying a motion for new trial, and such an order will not be reversed absent clear and manifest abuse of that discretion." *Chavez*, 98 N.M. at 684, 652 P.2d at 234. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the trial court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *Rojo*, 1999-NMSC-001, ¶ 41 (internal quotation marks and citation omitted).

**1.      *Release of the State's Medical Expert Before the Defense Case***

**{32}**    The State called a forensic pathologist who testified as an expert medical witness at trial. Defense counsel cross-examined her after her direct testimony. The district court released the expert witness after her testimony, and Defendant never attempted to call her in his case in chief. Defendant later argued in his motion for a new trial that releasing the

expert was error, even though Defendant admitted both that he had no reason to call the witness and that he knew he could have had the witness subpoenaed or recalled if he determined that he needed further testimony from her. Defendant now claims that "because the doctor was released, he was unable to call her and present her in his case to address whatever issues might have arisen and she therefore, seemed solely to be a State's witness." Nothing in the record suggests that Defendant was prejudiced by the district court's decision to release the witness. *See Tollardo*, 2012-NMSC-008, ¶ 42 (explaining that the proper focus of a harmless error review is whether the error affected the verdict). Accordingly, even assuming without deciding that releasing the witness was error, we conclude that any error was harmless.

## 2.    *The State's Reenactment of the Murder During Closing*

**{33}**    The State initially intended to call an investigator as an expert witness who would present an expert opinion in the form of a reenactment of the attack. The proposed reenactment apparently would have been based on the expert's file, which contained pictures, calculations, facts, and demonstrations that he had performed. Defendant objected and asked the district court to exclude the testimony. The district court determined that the State failed to give notice to the defense that the witness would be called as an expert and that the State failed to give Defendant a copy of the expert's file, in violation of Rules 5-501(A)(3)-(5) NMRA. The district court offered three possible remedies: Defendant could be allowed time to find his own expert, the witness could be excluded altogether, or the witness could be allowed to testify strictly as a fact witness. Defendant agreed to allow the witness to testify as a fact witness only.

**{34}**    The witness told the jury that he investigated the murder and explained what he found at the scene. He told the jury that he examined the victim's clothing and that he saw pictures of the victim. The victim's sweatshirt had blood and "numerous" cuts on the left side, in the rib cage area under the left arm, and the right side had no blood or cuts. When the witness examined the T-shirt the victim wore beneath the sweatshirt, he found cuts or holes that were "in direct correlation" with those in the sweatshirt. And when the witness examined the victim's undershirt, he found cuts consistent with those in the T-shirt the victim wore and consistent with the injuries the victim suffered.

**{35}**    The State argued in closing, through a reenactment based in part on this factual testimony, that the victim's thirteen stab wounds in the rib cage area on his left side suggested that Defendant intentionally prevented the victim from defending himself by trapping the victim's left arm in a raised position, exposing the left side of the victim's chest.

**{36}**    Defendant now claims that he was denied due process of law because the prosecutor was allowed in closing to reenact in a theory of the case that was the same as the expert's unadmitted opinion and based on admitted evidence which had not been made available in timely pretrial discovery.

9

**{37}** The "trial court has wide discretion in . . . controlling counsel's argument to the jury and, if no abuse of this discretion or prejudice to the defendant is evident, error does not result." *State v. Jett*, 111 N.M. 309, 314, 805 P.2d 78, 83 (1991) (internal quotation marks and citation omitted). Defendant does not explain why he was prejudiced by either the delay in disclosing the expert's report or by the State's arguments in closing. *See Rojo*, 1999-NMSC-001, ¶ 61, 126 N.M. 438, 971 P.2d 829 (refusing to hold that the prosecution's delay in disclosing evidence required reversal in the absence of a showing of prejudice from the nondisclosure); *State v. Ruffino*, 94 N.M. 500, 503, 612 P.2d 1311, 1314 (1980) (explaining that the inquiry on appeal is whether the prosecutor's comments in closing prejudiced the jury); *see also State v. McDaniel*, 2004-NMCA-022, ¶ 6, 135 N.M. 84, 84 P.3d 701 ("The prejudice must be more than speculative."). The record indicates that the State's argument was based on the evidence admitted at trial, and Defendant cites no authority that stands for the proposition that precludes counsel from thinking about an unadmitted expert opinion in preparing and presenting closing argument. *See Lee v. Lee (In re Adoption of Doe)*, 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984) ("We assume where arguments in briefs are unsupported by cited authority [that] counsel . . . was unable to find any supporting authority.").

**{38}** Because Defendant has not argued why the late disclosure or the State's closing arguments prejudiced him, we reject Defendant's arguments on this issue.

### 3.    *The Prosecutor's Pretrial Comments to a Witness About Defense Counsel*

**{39}** Defendant claims that just before trial defense counsel reviewed an audio recording of an interview with a witness for the State in which the prosecutor allegedly made improper comments about defense counsel. Defendant now argues without explanation that as a result of those statements, the witness "became more hostile and 'State oriented.'"

**{40}** But Defendant does not indicate the content of the alleged improper statements or their location in the record. "The burden is on appellant to provide the necessary record in this Court." *State v. Alonzo L. Duran*, 91 N.M. 756, 759, 581 P.2d 19, 22 (1978), *overruled on other grounds by State v. Gonzales*, 111 N.M. 363, 366, 805 P.2d 630, 633 (1991). Where a defendant fails to provide sufficient record for review of an issue, the reviewing court may deem the issue abandoned. *See id.*

**{41}** Because Defendant has not provided the allegedly derogatory statements, this Court cannot review whether the statements would have prejudiced Defendant's case or whether the district court abused its discretion when it denied Defendant's motion on this issue. *See id.* Accordingly, we reject Defendant's claims on this issue.

### 4.    *The State's Characterization of the "High-Fiving Each Other" Testimony*

**{42}** Defendant appears to argue that the State mischaracterized the testimony of Erica Nañez when the State argued in closing that Defendant and his friends were acting "fine, like

nothing, like high-fiving each other." Defendant does not point out how the State may have incorrectly mischaracterized the testimony. Defendant also does not explain how any mischaracterization may have prejudiced his defense. Instead, Defendant argues vaguely that "in re-characterizing the testimony, the State actually mis-represented the testimony, which prejudiced his defense." Nor does Defendant cite any authority from any jurisdiction supporting his argument, leading us to conclude that no such authority exists. *See In re Adoption of Doe*, 100 N.M. at 765, 676 P.2d at 1330 ("We assume where arguments in briefs are unsupported by cited authority [that] counsel . . . was unable to find any supporting authority."). Accordingly, we reject Defendant's claims that the State's summation unlawfully prejudiced his defense.

**{43}** In sum, we hold that the district court did not abuse its discretion when it denied Defendant's motion for a new trial based on the various alleged errors.

## III. CONCLUSION

**{44}** We affirm Defendant's conviction for first-degree murder and remand to the district court with instructions to vacate Defendant's conviction for tampering with evidence.

**{45} IT IS SO ORDERED.**

 

 

_____
**CHARLES W. DANIELS, Justice**

**WE CONCUR:**

_____
**PETRA JIMENEZ MAES, Chief Justice**

_____
**PATRICIO M. SERNA, Justice**

_____
**RICHARD C. BOSSON, Justice**

_____
**EDWARD L. CHÁVEZ, Justice**

**Topic Index for *State v. Guerra*, Docket No. 33,052**

**APPEAL AND ERROR**
Exhibits
Harmless Error
Standard of Review

11

**CONSTITUTIONAL LAW**
Due Process
Misconduct by Prosecutor

**CRIMINAL LAW**
Murder
Specific Intent
Tampering with Evidence

**CRIMINAL PROCEDURE**
Effective Assistance of Counsel
Expert Witness
New Trial
Substantial or Sufficient Evidence