This decision was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of non-precedential dispositions. Please also note that this electronic decision may contain computer-generated errors or other deviations from the official paper version filed by the Supreme Court.

## IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Filing Date: <u>April 24, 2014</u>**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                      **NO. 34,008**

**VICTOR PAIZ,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DONA ANA COUNTY**
**Douglas R. Driggers, District Judge**

Robert E. Tangora, L.L.C.
Robert E. Tangora
Santa Fe, NM

for Appellant

Gary K. King, Attorney General
Ralph E. Trujillo, Assistant Attorney General
Santa Fe, NM

for Appellee

**DECISION**

**DANIELS, Justice.**

{1}  Defendant Victor Paiz has appealed his convictions for first-degree murder and other offenses, primarily on the grounds that the introduction of testimony from his previous trial violated his right of confrontation under the Sixth Amendment of the United States Constitution or amounted to inadmissible hearsay under Rules 11-802 and 11-804(B)(1) NMRA. In addition, he raises issues of insufficiency of evidence and cumulative error. We have jurisdiction over this direct appeal under Article VI, Section 2 of the New Mexico Constitution and Rule 12-102(A)(1) NMRA. Because this appeal presents no novel issues, we affirm with this unpublished and nonprecedential decision under Rule 12-405(B) NMRA.

## I.   BACKGROUND

## A.   Procedural History

{2}  This appeal arises from Defendant's second trial and conviction for the murder of Jesse Bustillos and the related shootings of three other individuals. *See State v. Paiz*, 2011-NMSC-008, ¶¶ 1, 3, 149 N.M. 412, 249 P.3d 1235. We reversed Defendant's original convictions and remanded for a new trial because of the improper joinder of an unrelated drug trafficking charge with the eight counts stemming from the incident that resulted in Bustillos's death. *See id.* ¶¶ 5, 26.

**{3}** At his second trial, a jury returned guilty verdicts on alternative counts of first-degree willful and deliberate murder and first-degree felony murder, one count of shooting at or from a motor vehicle resulting in great bodily harm, two counts of aggravated battery with a deadly weapon, two counts of aggravated assault with a deadly weapon, and one count of tampering with evidence. The district court vacated the felony murder conviction on double jeopardy grounds and sentenced Defendant to life in prison plus twenty-one years. Finding no error, we affirm Defendant's convictions.

**B.      Former Testimony of Mata-Diaz and Escobedo**

**{4}** Defendant's primary challenge on appeal is to the admission of the prior testimony of two witnesses, Arturo Mata-Diaz and Gerardo Escobedo, both of whom testified in Defendant's first trial but were unavailable to testify in his second trial. The State argued in a pretrial motion that the previous testimony of Mata-Diaz and Escobedo satisfied the requirements of the former testimony exception under Rule 11-804(B)(1) and therefore should not be excluded as hearsay. Defendant objected to the prior testimony on Sixth Amendment grounds, arguing that its admission violated his right of confrontation because the witnesses were not available to testify in his second trial. The district court ruled that the testimony met the requirements of Rule 11-804(B)(1) and did not violate Defendant's right of confrontation.

**{5}** With the help of an actor reading the prior testimony, counsel for the State and Defendant recreated the prior examinations of Mata-Diaz and Escobedo for the jury at Defendant's second trial. We summarize the challenged testimony below and provide additional facts as necessary throughout this decision.

**{6}** Mata-Diaz testified that he was hosting an anniversary party at his home on the afternoon of the shooting when he received a phone call from Defendant, who asked Mata-Diaz "to go pick up some things." Guided by Defendant's uncle, Mata-Diaz drove to an unfamiliar house where he found Defendant and a young man named Choco, who had been living with Defendant for approximately a week. According to Mata-Diaz, Defendant appeared "sad" and "scared," and he told Mata-Diaz, "I fucked somebody up." Mata-Diaz returned home with Choco but left Defendant behind because Defendant had made arrangements to go "in a different way." After arriving back at home, Mata-Diaz found a pistol that he believed Choco had brought with him earlier that evening. Mata-Diaz sold the pistol the next day because he was afraid and did not know what else to do with it. Some time later, the police contacted Mata-Diaz, and he helped them recover the gun.

**{7}** During the cross-examination of Mata-Diaz, Defendant's attorney pressed the witness about statements that he had made to an investigator about Choco's role in the shootings. The back-and-forth between Mata-Diaz and Defendant's attorney left a

4

clear impression that Mata-Diaz had told the investigator that he believed Choco was the shooter. On redirect, Mata-Diaz clarified that Choco had never actually told Mata-Diaz that he had been the shooter.

{8} Escobedo's testimony provided more detail about the incidents immediately before and after the shooting. He testified that he was at Defendant's house on the afternoon of the shooting with Defendant and three other men, including Choco. The men were outside washing Defendant's black Mercedes Benz when two people drove past in a gold-colored car, "saying bad words and throwing a finger." A short time later the gold car passed by again, this time with five or six occupants, including someone who waved a red bandana. Escobedo then heard Defendant tell his associates, "Go get it," and a few minutes later Choco returned with a revolver, which Escobedo helped load with bullets from the trunk of Defendant's car.

{9} When the men in the gold car passed by a third time, Escobedo drove after them in his van with Defendant, Choco, and the other two men as his passengers and eventually cornered the car at an intersection. From his rearview mirror, Escobedo saw someone get out of the gold car and begin approaching the driver's side of the van. As Escobedo got out of the van and prepared to fight, he saw Defendant open the passenger door. About 20 seconds later, Escobedo heard three gunshots, followed several seconds later by about three more shots. Escobedo turned toward the gold car

5

and saw that the driver had been shot. He got back in the van with Defendant, Choco, and his other two passengers and "took off."

{10} Escobedo recounted that he next drove to his aunt's house, where they hid the van and called his father for help. While the men were altering the van to make it less recognizable, Escobedo noticed that Defendant was "hunched down near the wall," with "reddish," "watery" eyes, looking "sad." At about the same time, Escobedo saw that Choco had the gun in the waistband of his pants. Escobedo's father arrived and drove Escobedo and the other two men to Mata-Diaz's house. After their arrival, Escobedo received a telephone call from Defendant, who asked Escobedo to give the phone to Mata-Diaz. Mata-Diaz left a short time later and returned with Choco.

{11} On cross-examination, Defendant's attorney questioned Escobedo extensively about the events on the afternoon of the shootings. Prompted by defense counsel, Escobedo clarified that he did not see Defendant actually get out of the van before the shots were fired. Escobedo also recalled that Choco had the gun when Escobedo, Defendant, Choco, and the other two men first got in the van to pursue the gold car, and that Choco had the gun "after everything happened." Escobedo also testified that Defendant could not have had the gun when he stepped out of the van because Escobedo, who was sitting next to Defendant in the van, never saw Choco pass the gun to Defendant. On redirect, Escobedo clarified that he could not watch Choco the

6

whole time that he was in the van, that he did not see what Defendant and Choco did after he got out of the van, and that he did not know who shot the gun.

**II.     DISCUSSION**

**A.     The Former Testimony Did Not Violate Rule 11-804(B)(1) or Defendant's Right of Confrontation**

**{12}**     Defendant contends that the former testimony of Mata-Diaz and Escobedo was inadmissible hearsay in his second trial and that admission of the unavailable witnesses' testimony violated his right of confrontation. We review Defendant's claims in two steps. First, we must determine whether the district court abused its discretion when it admitted the prior testimony under the New Mexico Rules of Evidence. *See State v. Lopez*, 2011-NMSC-035, ¶ 4, 150 N.M. 179, 258 P.3d 458. If we determine that the admission was proper under those rules, we consider *de novo* whether the Confrontation Clause was violated. *See id.*

**1.     The District Court Properly Admitted the Former Testimony Under Rule 11-804(B)(1)**

**{13}**     Rule 11-804 creates an exception to the general provision of Rule 11-802 that hearsay evidence is inadmissible in the absence of a specific exception. Under Rule 11-804, certain types of out-of-court statements may be admitted when the declarant is unavailable as a witness. At issue in this appeal is Rule 11-804(B)(1), which provides that the rule against hearsay does not exclude the former testimony of an

7

unavailable witness so long as the testimony

> (a) was given as a witness at a trial, hearing, or lawful deposition, whether given during the current proceeding or a different one; and
> (b) is now offered against a party who had . . . an opportunity and similar motive to develop it by direct, cross-, or redirect examination.

{14} Defendant does not dispute that Mata-Diaz and Escobedo gave testimony at a trial or that he had the opportunity to develop their testimony by cross-examination or that they were unavailable for his retrial. Defendant's argument instead is that he lacked a similar *motive* for cross-examining the two witnesses at his first trial because his defense theory changed from self-defense at his first trial to innocence at his second trial. Defendant contends that his motive for developing the testimony of Mata-Diaz and Escobedo at his first trial was limited by his assertion of self-defense, which conceded that Defendant "committed the killing," while his later claim of innocence required the State to prove beyond a reasonable doubt that Defendant killed Bustillos.

{15} The State argues convincingly that Defendant failed to preserve his argument under Rule 11-804(B)(1). According to the State, Defendant conceded to the district court that the former testimony of Mata-Diaz and Escobedo satisfied the rule of evidence but argued that it failed the dictates of the Confrontation Clause of the Sixth Amendment. Although there is merit in the State's position, we will address the merits

of Defendant's evidentiary rule argument, which has substantial overlap with the confrontation analysis. Even if Defendant had objected on the basis of the rules, we conclude that the district court would not have abused its discretion by admitting the challenged testimony.

**{16}** Defendant cites *State v. Slayton*, 1977-NMCA-051, 90 N.M. 447, 564 P.2d 1329, to support his argument that a different defense theory in his second trial rendered the former testimony of Mata-Diaz and Escobedo inadmissible. In *Slayton*, the Court of Appeals previously had reversed the defendant's second-degree murder conviction, reasoning that an agreement between the state and counsel for the defendant to limit the defendant's first trial to the issue of his sanity had "prevented the defendant from having a meaningful trial." *Id.* ¶ 1. Due to that agreement, the defendant's counsel had limited his trial preparation for the first trial—including the scope of a psychiatrist's cross-examination at a deposition—to the issue of the defendant's sanity and had neglected to develop any evidence of the defendant's guilt or innocence. *See id.* ¶ 13. At the defendant's second trial, the district court admitted the psychiatrist's deposition testimony as evidence of the defendant's guilt. *See id.* ¶ 2. The Court of Appeals reversed the defendant's conviction for the second time, concluding, "To use the deceased witness's testimony concerning guilt would be fundamentally unfair because under the arrangement between counsel there was to be

9

no meaningful inquiry concerning guilt. Such fundamental unfairness violates due process." *Id.* ¶ 19.

**{17}** *Slayton* has little relevance to this case. *Slayton* was decided on due process grounds as a matter of fundamental fairness, rather than under Rule 11-804(B)(1). *Id.* ¶ 19. Defendant does not contend that introducing the former testimony of Mata-Diaz and Escobedo rendered his trial fundamentally unfair; and therefore the *Slayton* rationale is inapposite.

**{18}** In addition, unlike the agreement in *Slayton*, nothing induced Defendant to limit his trial preparation or cross-examination of Mata-Diaz and Escobedo to the issue of self-defense. His decision to argue that he acted in self-defense was the sort of tactical decision that we have held does not preclude admission of prior testimony under Rule 11-804(B)(1). *See State v. Gonzales*, 1992-NMSC-003, ¶ 20, 113 N.M. 221, 824 P.2d 1023 (finding no violation of Rule 11-804(B)(1) when "[n]o action of the State impeded [the defendant's] opportunity to develop or impeach [the witness's] testimony"), *overruled on other grounds by State v. Montoya*, 2013-NMSC-020, ¶ 54, 306 P.3d 426. In this case, Defendant had the opportunity to, and actually did, develop evidence at his first trial that supported his innocence-based defenses in both trials. We therefore reject Defendant's assertion that *Slayton* is persuasive.

**{19}** Under Rule 11-804(B)(1), we have held that "[w]hether a party had an

opportunity and similar motive to develop testimony must be determined on a case-by-case basis." *State v. Lopez*, 2011-NMSC-035, ¶ 6, 150 N.M. 179, 258 P.3d 458. Based on our review of the record before us, we do not agree with Defendant that his self-defense theory affected or otherwise limited his motive to develop the testimony of Mata-Diaz and Escobedo. In fact, we are hard-pressed to see how his questioning of the two men was constrained by his self-defense theory at all. Neither Mata-Diaz nor Escobedo testified on direct examination that Defendant had shot the victims, and Defendant therefore did not question either witness about whether Defendant had shot the victims in self-defense.

**{20}** Instead, Defendant appeared to focus the cross-examinations of Mata-Diaz and Escobedo on the issue of Defendant's identity as the shooter, highlighting that neither witness was certain about Defendant's role in the shootings and implying that Defendant's associate, *Choco*, was the shooter. The relevance of this line of questioning to Defendant's later claim of innocence at his second trial is clear, where he emphasized that the State had failed to prove that Defendant was the shooter and failed to ask a single witness, "Who shot Jesse Bustillos, or who shot that gun?" Regardless of Defendant's motive at his first trial for developing the testimony of Mata-Diaz and Escobedo about his role in the shooting, the fact remains that he did so, and Defendant offers no hint of how he might have further developed their

11

testimony at his second trial. Under these circumstances, we hold that the district court did not abuse its discretion when it admitted the former testimony of Mata-Diaz and Escobedo under Rule 11-804(B)(1).

{21}     The bottom line is that Defendant had a consistent motive for cross-examining the prosecution witnesses at both trials: He was charged with murdering Jesse Bustillos and had a clear and compelling motive to show that his conduct did not constitute murder. The fact that he decides to adjust the tactics of his defense theory does not change that fundamental motive. He has cited no authority, and we can find none, that stands for the proposition that an accused can defeat admission at a second proceeding of properly preserved prior testimony that he had a full and fair opportunity to cross-examine at a prior proceeding, simply by changing his defense tactics.

**2.     The Former Testimony Did Not Violate Defendant's Right of Confrontation**

{22}     Defendant also argues that he did not have an adequate opportunity to cross-examine the two witnesses at his first trial because he chose to change his theory of defense at his second trial.

{23}     "When admitting testimonial statements, the Confrontation Clause requires that the accused have a prior opportunity for cross-examination. Once a defendant has

tested the reliability of an unavailable witness's testimony against him in the 'crucible of cross-examination,' the demands of the Confrontation Clause have been met." *Lopez*, 2011-NMSC-035, ¶ 11 (quoting *Crawford v. Washington*, 541 U.S. 36, 61, 68 (2004) (citation omitted)). Defendant does not dispute that he had a prior opportunity to cross-examine Mata-Diaz and Escobedo about the testimony that was admitted in their absence at his second trial. That is all that the Confrontation Clause requires. *See id.*; *see also State v. Henderson*, 2006-NMCA-059, ¶ 16, 139 N.M. 595, 136 P.3d 1005 ("While Rule 11-804(B)(1) requires the defendant to have had both an 'opportunity and similar motive' to cross-examine the statement for it to be admissible, *Crawford* only requires that the defendant had an 'opportunity for cross-examination' of the statement."). The admission of the former testimony of Mata-Diaz and Escobedo did not violate Defendant's right of confrontation under the Confrontation Clause of the Sixth Amendment to the United States Constitution. Although Defendant cites both the federal and state constitutions in support of his confrontation claim, we do not reach his state constitutional claim because he has failed to develop the issue adequately. *See State v. Leyva*, 2011-NMSC-009, ¶ 49, 149 N.M. 435, 250 P.3d 861 (stating that when a state constitutional provision has never been interpreted as providing greater protections than its federal counterpart, the proponent must make the arguments necessary for the court to conduct an interstitial

analysis).

## B.    Defendant's Murder Conviction Is Supported by Substantial Evidence

{24}    Defendant argues that the conflicting testimony about who had the revolver at the time of the shootings, coupled with the absence of any witness who saw Defendant shoot at the victim's car, does not support a jury finding that Defendant "acted with the requisite *mens rea* to commit deliberate intent murder."

{25}    When reviewing a verdict for substantial evidence, "[w]e view the evidence in the light most favorable to supporting the verdict and resolve all conflicts and indulge all inferences in favor of upholding the verdict. We may not reweigh the evidence nor substitute our judgment for that of the jury." *State v. Hernandez*, 1993-NMSC-007, ¶ 68, 115 N.M. 6, 846 P.2d 12 (internal citation omitted).

## 1.    There Was Substantial Evidence That Defendant Shot Bustillos

{26}    Defendant correctly acknowledges that there was conflicting evidence at trial about whether he was the shooter. As we previously have summarized, Defendant emphasized in his closing argument that the State failed to prove that Defendant was the shooter or to ask a single witness, "Who shot Jesse Bustillos, or who shot that gun?" We also have noted that the testimony of Mata-Diaz and Escobedo implicated Choco as the shooter. But "'[c]ontrary evidence supporting acquittal does not provide a basis for reversal.'" *State v. Guerra*, 2012-NMSC-027, ¶ 27, 284 P.3d 1076

14

(alteration in original) (quoting *State v. Riley*, 2010-NMSC-005, ¶ 12, 147 N.M. 557, 226 P.3d 656), *overruled on other grounds by Montoya*, 2013-NMSC-020, ¶ 54.

{27} Looking instead to the evidence that supports the verdict, the jury also heard testimony from the owner of the gold car, Luis Alberto Mata, about Defendant's role in the shooting. Mata testified that when Escobedo cornered the car with his van, Mata got out of the car and prepared to fight Defendant. Mata then saw Defendant get out of the van, holding a large-caliber black revolver. Mata ducked for cover behind the van and heard shots fired a few seconds later. After the gunshots stopped, the van left, and Mata ran to his car where he found Bustillos slumped over the gear shift, dead. On cross-examination, Mata clarified that, although he saw Defendant holding the gun just before the shots were fired, he did not actually see Defendant shoot the gun.

{28} We are satisfied that Mata's testimony, together with Mata-Diaz's testimony that Defendant told him he had "fucked somebody up," was sufficient for the jury to conclude beyond a reasonable doubt that Defendant was the shooter. *See, e.g.*, *State v. Bankert*, 1994-NMSC-052, ¶ 17, 117 N.M. 614, 875 P.2d 370 ("A conviction will be upheld if based upon a logical inference from circumstantial evidence.").

**2. There Was Substantial Evidence of Defendant's Mens Rea to Support His First-Degree Murder Conviction**

{29} To convict Defendant of first-degree murder, the jury was instructed that it had

15

to find beyond a reasonable doubt that Defendant acted with the "deliberate intention to take away the life of Jesse Bustillos or any other human being." *See* UJI 14-201 NMRA. "In determining whether a defendant made a calculated judgment to kill, the jury may infer intent from circumstantial evidence; direct evidence of a defendant's state of mind is not required." *Guerra*, 2012-NMSC-027, ¶ 28.

{30} The jury heard Escobedo's testimony that, after the gold car drove by Defendant's house a second time, Defendant ordered his associates to "[g]o get it" and that Choco returned with a revolver which the men loaded with ammunition from Defendant's car. Escobedo also testified that, after arming themselves with the revolver, Defendant and his associates got in Escobedo's van and pursued the gold car. And the jury heard Mata testify that when Escobedo's van cornered Mata's car Defendant immediately got out of the van holding a large-caliber black revolver, that shots were fired a few seconds later, and that Mata found Bustillos dead in the front seat of the car.

{31} Dr. Jeffrey Nine, the medical investigator who performed Bustillos's autopsy, also testified at Defendant's trial. Dr. Nine testified that Bustillos had been shot four times, including shots to his head, neck, and chest that would have been independently fatal. Based on this evidence, we are satisfied that the jury could have reasoned beyond a reasonable doubt that Defendant acted with the deliberate intention to take

16

away the life of another. *Cf. Guerra*, 2012-NMSC-027, ¶ 29 (including "evidence that [the defendant] stabbed the victim thirteen times and that many of the wounds were to vital organs" as evidence of overkill that supported a finding of deliberate intent). Defendant's first-degree murder conviction is supported by substantial evidence.

**C.     There Was No Cumulative Error**

{32}     For his final argument, Defendant contends that the admission of the testimony of Mata-Diaz and Escobedo, together with the lack of substantial evidence to support his murder conviction, amounted to cumulative error that rendered the verdict "inherently unreliable." Cumulative error occurs when a succession of separately harmless errors, in the aggregate, deny a defendant a fair trial. *See State v. Baca*, 1995-NMSC-045, ¶ 39, 120 N.M. 383, 902 P.2d 65. Because we conclude that Defendant has failed to show that any error occurred at his trial, we also conclude that he has failed to show that his conviction was the result of cumulative error. *See State v. Saiz*, 2008-NMSC-048, ¶ 66, 144 N.M. 663, 191 P.3d 521 ("[W]here there is no error to accumulate, there can be no cumulative error."), *abrogated on other grounds by State v. Belanger*, 2009-NMSC-025, ¶ 36 & n.1, 146 N.M. 357, 210 P.3d 783.

**III.     CONCLUSION**

{33}     Finding no error that would warrant reversal, we affirm all of Defendant's convictions.

17

{34}   **IT IS SO ORDERED.**


_____

**CHARLES W. DANIELS, Justice**

**WE CONCUR:**

_____
**BARBARA J. VIGIL, Chief Justice**

_____
**PETRA JIMENEZ MAES, Justice**

_____
**RICHARD C. BOSSON, Justice**

_____
**EDWARD L. CHÁVEZ, Justice**