This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

 Plaintiff-Appellee,

v.             **No. A-1-CA-35688**

**JERRAD BOWEN,**

 Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Alisa A. Hart, District Judge**

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Will O'Connell, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**VANZI, Chief Judge.**

**{1}** Defendant Jerrad Bowen appeals his convictions for aggravated battery with a deadly weapon and tampering with evidence. On appeal he argues that (1) the district court committed reversible error when it refused to give Defendant's tendered jury instruction for non-deadly force self-defense; and (2) the evidence offered at trial was insufficient to support his conviction for tampering with evidence. We affirm.

**BACKGROUND**

**{2}** On or about May 9, 2015, Defendant and Dennis Knight (Victim) were involved in a bar fight at the Dirty Bourbon nightclub in Albuquerque, New Mexico. According to Victim, he was at the crowded club with his girlfriend when he felt someone push up against his shoulder. Victim testified that he then made eye contact with Defendant, and Defendant said, "You got an F'en problem, you know." The two exchanged words at which point Defendant, according to Victim, "started like getting just like, lack of a better term, going nuts kind of." According to Victim, a group of Defendant's friends tried to hold Defendant back, but Defendant appeared through the crowd and "bear hugged" Victim. Victim testified that he grabbed Defendant's arms and tried to hold them down to avoid getting punched. Victim struggled with Defendant through the crowd of his friends and pushed Defendant up against a wall. Victim testified that he "could feel [Defendant] like hitting me or somebody was hitting me on the sides[,]" at which point Victim threw Defendant to the floor. The

bouncers from the club then showed up and pulled Victim off of Defendant. Victim admitted at trial that he is six feet two inches tall and 260 pounds, had been a wrestler in high school, and used a wrestling move known as an "underhook" to control Defendant's arms.

{3}     Victim testified that after the fight, he was taken out of the club and noticed that he was covered in blood. The bouncers lifted Victim's shirt and there was blood running from his arms down his torso. Victim was initially unsure if he had landed on a glass bottle, but then learned he had been stabbed. Victim was transported by ambulance to the hospital and treated for his wounds. At the time of trial, almost a year after the fight, Victim continued to experience numbness and discomfort from his wounds.

{4}     After the fight, Albert Lucero, who was working security at the club, followed Defendant to his car where he overheard Defendant say that he had stabbed somebody and needed to get out of there. Lucero testified that Defendant put two knives, his cowboy hat, and bloody t-shirt into his car. Officer Jonathan Mares with the Albuquerque Police Department responded to the scene. After speaking with security at the club, Officer Mares left the club, drove across the intersection near the club and made contact with Defendant who was outside of a nearby store. Defendant had blood on his clothes and stated to Officer Mares, "I don't have a knife." Another officer

3

testified that Defendant said to her, "Run the cameras. I had someone take a swing at me," and stated that he was defending himself.

{5}     After a search warrant was obtained for Defendant's vehicle, officers executed the warrant and recovered from the vehicle a bloody knife located on the driver's seat, along with a cowboy hat that had dried blood on the front rim. A forensic scientist in the DNA unit at the Albuquerque Police Department testified that Victim could not be excluded as the major contributor to the blood on the blade of the knife and the blood on the cowboy hat, and Defendant could not be excluded as the major contributor to DNA on the inner headband of the cowboy hat.

{6}     During the trial, the parties presented jury instructions to the district court. In accordance with Defendant's theory of self-defense, Defendant offered two self-defense instructions: UJI 14-5181 NMRA (non-deadly force self-defense) and UJI 14-5183 NMRA (deadly force self-defense). The elements for non-deadly force self-defense under UJI 14-5181, as presented by Defendant, were:

> 1.     There was an appearance of immediate danger of bodily harm to [Defendant] as a result of [Victim]'s bearhugging or underhooking [Defendant], pushing [Defendant] across the bar, pinning [Defendant] to a wall, lifting [Defendant] over [Victim]'s left shoulder and throwing [Defendant] to the floor and thereafter getting on top of [Defendant]; and
>
> 2.     [Defendant] was in fact put in fear of immediate bodily harm and used a knife on [Victim] because of that fear; and

4

3. [Defendant] used an amount of force that [D]efendant believed was reasonable and necessary to prevent the bodily harm; and

4. The apparent danger would have caused a reasonable person in the same circumstances to act as [Defendant] did.

*See id.*

{7} The elements for deadly force self-defense under UJI 14-5183, as ultimately instructed to the jury, were:

1. There was an appearance of immediate danger of death or great bodily harm to [D]efendant as a result of [Victim's] bearhugging or underhooking [D]efendant, pushing [D]efendant, pinning [D]efendant to the wall, throwing [D]efendant to the floor and thereafter getting on top of [D]efendant; and

2. [D]efendant was in fact put in fear of immediate death or great bodily harm and stabbed [Victim] with a knife because of that fear; and

3. The apparent danger would have caused a reasonable person in the same circumstances to act as [D]efendant did.

*See id.*

{8} The State opposed Defendant's instruction on non-deadly force self-defense and the district court agreed, ruling that it would only instruct the jury on deadly force self-defense "[b]ecause stabbing another person with a knife does qualify as deadly force, whether or not—the resulting injury with death isn't the issue. And [UJI 14-]5181 should not [be] given."

**{9}** At the close of trial, the jury convicted Defendant of aggravated battery with a deadly weapon and tampering with evidence. Defendant filed this appeal challenging the district court's denial of Defendant's proffered jury instruction on non-deadly force self-defense and the sufficiency of the evidence underlying the jury's verdict finding the Defendant guilty of tampering with evidence.

**DISCUSSION**

**Jury Instruction**

**{10}** "The propriety of denying a jury instruction is a mixed question of law and fact that we review de novo." *State v. Guerra*, 2012-NMSC-014, ¶ 13, 278 P.3d 1031 (internal quotation marks and citation omitted). When considering a defendant's requested instructions, this Court "view[s] the evidence in the light most favorable to the giving of the requested instruction." *State v. Hill*, 2001-NMCA-094, ¶ 5, 131 N.M. 195, 34 P.3d 139.

**{11}** "[A] defendant is entitled to have his or her theory of the case submitted to the jury under proper instructions where the evidence supports it." *State v. Lucero*, 1998-NMSC-044, ¶ 5, 126 N.M. 552, 972 P.2d 1143 (alteration, internal quotation marks, and citation omitted). "A defendant is only entitled to jury instructions on a self-defense theory if there is evidence presented to support every element of that theory." *State v. Baroz*, 2017-NMSC-030, ¶ 14, 404 P.3d 769; *see State v. Boyett*, 2008-

NMSC-030, ¶ 12, 144 N.M. 184, 185 P.3d 355 ("Failure to instruct the jury on a defendant's theory of the case is reversible error only if the evidence at trial supported giving the instruction."). When the evidence does not support the defendant's theory of self-defense, then the district court is not required to provide that jury instruction to the jury. *See State v. Rudolfo*, 2008-NMSC-036, ¶ 17, 144 N.M. 305, 187 P.3d 170 ("A defendant is not entitled to a self-defense instruction unless it is justified by sufficient evidence on every element of self-defense."); *State v. Sutphin*, 2007-NMSC-045, ¶ 22, 142 N.M. 191, 164 P.3d 72 ("[A] defendant is not entitled to the instruction when the evidence is so slight as to be incapable of raising a reasonable doubt in the jury's mind on whether a defendant did act in self-defense." (omission, internal quotation marks, and citation omitted)).

{12}   Here, the district court did not commit reversible error when it refused to instruct the jury with the language of UJI 14-5181 because the evidence did not support Defendant's claim that he used non-deadly force. Contrary to Defendant's arguments, neither *Poore v. State*, 1980-NMSC-035, ¶¶ 10-11, 94 N.M. 172, 608 P.2d 148, nor *State v. Romero*, 2005-NMCA-060, ¶ 8, 137 N.M. 456, 112 P.3d 1113, require that a jury instruction be given merely because a defendant argues in favor of it. As stated in both cases, there must be some evidence supporting the instruction to warrant its provision to the jury. *See Poore*, 1980-NMSC-035, ¶ 10 ("While an

7

accused is entitled to instruction on his theory of the case if evidence exists to support it, the court need not instruct if there is absence of such evidence." (internal quotation marks and citation omitted)); *Romero*, 2005-NMCA-060, ¶ 8 ("In the case of self-defense, there must be some evidence, even if slight, to support the defense.").

{13}     Even when viewing the evidence in the light most favorable to Defendant, we conclude that there was not sufficient evidence to support a reasonable jury finding that Defendant's act of repeatedly stabbing Victim with a knife constituted non-deadly force. Although Defendant's knife was not per se a deadly weapon under the non-exhaustive definition in NMSA 1978, Section 30-1-12(B) (1963), this Court's decisions—both in published and memorandum opinions—demonstrate that using a weapon, including a knife to repeatedly stab someone, constitutes deadly force rather than non-deadly force. *See, e.g.*, *State v. Vargas*, No. A-1-CA-34276, mem. op. ¶ 13 (N.M. Ct. App. Feb. 8, 2018) (non-precedential) (affirming the district court's decision to tender only a deadly force self-defense instruction rather than a non-deadly force self-defense instruction where the defendant and the victim were using knives offensively and in a manner consistent with deadly force by "fighting" or "swinging" knives (internal quotation marks omitted)); *State v. Banda*, No. 34,457, mem. op. ¶¶ 6-11 (N.M. Ct. App. June 15, 2017) (non-precedential) (affirming the district court's decision denying a defendant's request for a non-deadly force instruction when the

8

defendant hit the victim repeatedly with nunchucks); *State v. Neatherlin*, 2007-NMCA-035, ¶ 20, 141 N.M. 328, 154 P.3d 703 (affirming that a person using their mouth to bite someone can be considered a deadly weapon); *State v. Montano*, 1999-NMCA-023, ¶¶ 5, 12, 126 N.M. 609, 973 P.2d 861 (affirming that a brick wall can be a deadly weapon when used to cause injury and dangerous wounds).

{14}	It is undisputed in this case that Defendant stabbed Victim numerous times with a knife in the arms and abdomen. Defendant's use of the knife to stab Victim amounted to "deadly force" because it was a "violent action known to create a substantial risk of causing death or serious bodily harm[.]" *State v. Cardenas*, 2016-NMCA-042, ¶ 19, 380 P.3d 866 (alteration, internal quotation marks, and citation omitted). Given the substantial risk of great bodily harm or death when stabbing someone with a knife, the district court did not err in rejecting Defendant's non-deadly force self-defense instruction as unsupported by the evidence.

**Sufficiency of the Evidence**

{15}	Defendant's second argument on appeal is that there was insufficient evidence to support his conviction for tampering with evidence. "We review sufficiency of the evidence . . . from a highly deferential standpoint." *State v. Dowling*, 2011-NMSC-016, ¶ 20, 150 N.M. 110, 257 P.3d 930. We view the evidence at trial "in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving

all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176.

{16} At trial, the jury was instructed that, to convict Defendant of tampering with evidence, it had to find that Defendant "hid or placed a knife in a vehicle" and, "[b]y doing so, . . . intended to prevent the apprehension, prosecution, or conviction of [D]efendant for the crime of aggravated battery." *See* UJI 14-2241 NMRA. On appeal Defendant argues that the State had insufficient evidence to support the conviction for tampering with evidence because the knife was found in Defendant's vehicle at the bar where the crime occurred. In support of his argument, Defendant relies on New Mexico cases in which our Supreme Court has held that the evidence was inadequate to support a conviction for tampering when the State relied solely on the police's inability to find the evidence. *See State v. Guerra*, 2012-NMSC-027, ¶ 16, 284 P.3d 1076; *State v. Silva*, 2008-NMSC-051, ¶¶ 17-21, 144 N.M. 815, 192 P.3d 1192; *State v. Duran*, 2006-NMSC-035, ¶¶ 12-16, 140 N.M. 94, 140 P.3d 515. Defendant appears to argue that just as the case law does not allow the State to rely solely on the fact that the police were unable to find evidence to support a conviction for tampering with evidence, the State should not be able to argue that Defendant tampered with evidence solely because the police found the knife that was in plain sight in Defendant's car.

**{17}** Defendant's interpretation of these cases is misplaced. The cited cases stand only for the proposition that the State cannot rely solely on the absence of evidence to prove intent to tamper with the evidence. *See, e.g.*, *Guerra*, 2012-NMSC-027, ¶ 16 (holding that "[t]he [s]tate cannot convict [the d]efendant of tampering with evidence simply because evidence that must have once existed cannot now be found"); *Silva*, 2008-NMSC-051, ¶ 19 (holding that the inability of the police to find the gun used in the crime was insufficient evidence to prove tampering with the evidence); *Duran*, 2006-NMSC-035, ¶ 15 (holding that the inability to find the knife used in the crime or bloody clothing was insufficient to support a conviction of tampering with evidence). Instead, the State must have some direct or circumstantial evidence other than an inability to find the evidence to support a conviction for tampering with the evidence. *Guerra*, 2012-NMSC-027, ¶ 14 ("[A]bsent either direct evidence of a defendant's specific intent to tamper or evidence from which the fact[-]finder may infer such intent, the evidence cannot support a tampering conviction." (internal quotation marks and citation omitted)).

**{18}** In this case, the State had evidence that Defendant intended to tamper with the evidence by taking the knives from the crime scene and putting them in his vehicle. At trial, a security guard testified that he saw Defendant put knives into his car. The testimony and evidence further showed that Defendant left the Dirty Bourbon

11

nightclub, crossed the intersection, and that an officer intercepted him outside a nearby store. When Defendant was arrested some blocks away from the club, he told police, "I don't have a knife." However, after a search warrant was obtained for his vehicle, officers found a bloody knife on the driver's seat.

{19}     Given this evidence, the jury could reasonably infer that Defendant intended to prevent his apprehension, prosecution, or conviction when he threw the knife in his car, left the scene of the crime, and tried to convince the police that he did not have a knife when he was eventually arrested. The fact that the knife was in plain sight in his car is irrelevant to Defendant's tampering conviction because, as noted by our Supreme Court, "the proper focus" in applying the tampering statute "should be on the accused subjective, specific intent to blind or mislead law enforcement, regardless of whether his objective is ill-conceived [or] ultimately unsuccessful." *State v. Jackson*, 2010-NMSC-032, ¶ 16, 148 N.M. 452, 237 P.3d 754, *overruled on other grounds by State v. Radosevich*, 2018-NMSC-028, ¶ 2, 419 P.3d 176. We agree with the State that Defendant did not identify any element of the crime that was not supported by the evidence to support overturning his conviction. Therefore, we affirm.

# CONCLUSION

{20}   For the reasons set forth above, we hold that the district court did not commit reversible error when it refused to give Defendant's tendered jury instruction for non-deadly force self-defense. We also hold that the evidence presented at trial is sufficient to sustain Defendant's conviction for tampering with evidence. We therefore affirm.

{21}   **IT IS SO ORDERED.**

_____

**LINDA M. VANZI, Chief Judge**

**WE CONCUR:**

_____

**J. MILES HANISEE, Judge**

_____

**HENRY M. BOHNHOFF, Judge**